**Schuyler Davis SMITH, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 01–05–00444–CR.**

Court of Appeals of Texas,
Houston (1st Dist.).

Sept. 28, 2007.

---

Christopher Edward Duncan, John J. Davis, Angleton, for Appellant.

Jeri Yenne, Crim. Dist. Atty., Jeremy E. Warren, Angleton, for Appellee.

Panel consists of Chief Justice RADACK and Justices ALCALA and BLAND.

## OPINION

ELSA ALCALA, Justice.

Appellant, Schuyler Davis Smith, appeals from a judgment convicting him of the first-degree felony of aggravated sexual assault of a child. *See* Tex. Pen.Code Ann. § 22.021(a)(2)(b) (Vernon Supp.2006). Appellant pleaded guilty to the court without a plea agreement with the State. After an evidentiary hearing, the court sentenced appellant to 40 years' confinement in prison. In two issues, appellant contends that he is entitled to a new sentencing hearing because the trial court abused its discretion by (1) admitting the clinical records of appellant's minor daughter who was not the victim of the offense and was not named in the indictment and (2) admitting hearsay evidence suggesting that appellant put sleeping medicine in complainant's chocolate milk on the evening of the offense. We conclude that the trial court did not abuse its discretion by admitting the clinical records of appellant's daughter. We also conclude appellant was not harmed by admission of the hearsay statement because the same or similar evidence was admitted without objection. We affirm.

## Background

On March 26, 2004, appellant's two daughters, T.S. and D.S., had two friends, V.B. and A.M., spend the night. During the night, V.B., who was 13 years old at the time, awoke to find appellant kneeling at her feet, sexually assaulting her. The next morning, V.B., who was upset, told Tracy Smith that she needed to go home. Tracy was appellant's wife and T.S. and D.S.'s mother. A few days later, V.B. reported the incident to her school counselor, who called V.B.'s mother to request a meeting. Before the meeting occurred, however, V.B.'s mother became aware of the sexual assault through a phone call from a relative. The relative told V.B.'s mother that V.B. had told an aunt over the telephone about the assault. The next day, the school counselor told V.B.'s mother about the incident. The school counselor also reported the offense to the Texas Department of Protective and Regulatory Services (TDPRS).

A TDPRS caseworker interviewed V.B. V.B. reported that after she had fallen asleep, she felt something hurt her. V.B. described the assault by relating that appellant penetrated her female sexual organ with his male sexual organ after he moved her shorts and panties to the side. The medical examination of V.B. revealed trauma "consistent with type(s) of acts described or time lapse since the last incident of abuse."

A.M., another child present that night, also reported inappropriate conduct by appellant. She was interviewed by Detective Wright of the Alvin Police Department and a TDPRS caseworker. A.M. reported that appellant came into the bedroom where she was sleeping. Appellant tried to get her to roll over onto her stomach by telling her that he had a magic finger. When A.M. refused to roll over, appellant kissed her on the cheek and told her to keep it a secret. Appellant then returned several times throughout the night to kiss her. In the interviews of T.S. and D.S., they each denied that appellant ever touched them inappropriately.

On two occasions, Detective Wright went to appellant's house to speak with him about the complaints against him. During the first visit, appellant denied the offense. On the second visit, appellant was evasive, refusing to answer direct questions. Appellant asked if there was any medical evidence to support the accusation. Believing that discussing the case with appellant at his house was not productive, Detective Wright asked him to call her to arrange a time to come to her office to speak to her, but appellant never called.

Although he denied the offense during the police interview, appellant "broke down and confessed" to his wife, admitting that he touched V.B.'s "private parts." Appellant claimed, however, that he only used his hand to touch V.B. He also admitted to "scaring" A.M., touching M.B., a six-year old girl, and touching C.N., a nine-year old girl. Appellant said that he never touched T.S. or D.S. Tracy reported appellant's statements to authorities, who charged appellant with the aggravated sexual assault of V.B.

Several months later, Tracy became concerned over the subject lines in some emails on the computer appellant used. She turned the computer over to Detective Wright. An examination by the Alvin Police Department's computer forensics detective revealed that of the over 25,000 images on the hard drive, he found "seven images that [he] believed to be underaged or child pornography." In addition, he found on the hard drive five common terms used on the internet to search for or describe child pornography, many of which were associated with a user name that corresponded to appellant. The detective also found 600 other files that he marked "of interest" because they were pornographic.

Appellant pleaded guilty without any agreement with the State regarding punishment. V.B., Tracy, and Detective Wright were among the witnesses who testified at the punishment hearing. The State offered State's Exhibit 3, the offense report, into evidence at the beginning of the hearing. Defense counsel affirmatively stated, "No objections, your honor." The State also offered clinical records of T.S.'s counseling as State's Exhibit 4. Appellant objected that the records were not relevant because victim impact evidence from T.S. was inadmissible since T.S. was not the victim named in the indictment and there was "no credible evidence that an offense had been committed against [T.S.]." The State responded that the records were admissible as extraneous offense evidence because "[T.S.] has been a victim of [appellant]." The trial court overruled appellant's objection.

Appellant offered into evidence Defense Exhibit 1, which was a report done at his request by a certified sex therapist. The report stated that, although appellant admitted his conduct, he "does not fully understand the dynamics involved in his offenses." The therapist opined that appellant may be "less likely to control his impulses." The report also states that some factors that might indi-

cate appellant's risk of re-offending were his "minimization of all personal responsibility for the offense" and his "limited to little remorse or empathy expressed for his victim."

### Victim Impact Evidence

■ In his first issue, appellant contends that the trial court abused its discretion by admitting into evidence the psychiatric and psychological records of appellant's daughter, T.S., who was not named in the indictment. Appellant does not identify any particular statements made by T.S.

■ At a sentencing hearing, "evidence may be offered by the [S]tate and the defendant as to any matter the court deems relevant," including extraneous offense evidence. Tex.Code Crim. Proc. Ann. art. 37.07, § 3(a)(1) (Vernon 2006). Extraneous offenses admitted at sentencing may be unadjudicated offenses. *See id.*

The records introduced by the State contain evidence of extraneous offenses committed against T.S. More specifically, T.S. said that appellant "pushed her hard and made her hit her head." T.S. also said that appellant was "mean" and "push[ed] her into a wall." T.S. described these events as "abuse" by appellant. The records also show that "[D.S.] said that ... [she] remembers that [T.S.] told her a long time ago that their father 'pushed a fork in [T.S.'s] privates.'" This evidence is admissible in the punishment phase of trial because it is evidence of unadjudicated crimes or bad acts committed by appellant. *See* Tex.Code Crim. Proc. Ann. art. 37.07, § 3(a)(1).

■ " 'Victim impact' evidence is evidence of the effect of an offense on people *other* than the victim." *Roberts v. State,* 220 S.W.3d 521, 531 (Tex.Crim.App.2007)

(emphasis in original) (holding that testimony in sentencing phase of trial by victim of extraneous robbery who described how robbery emotionally affected her is not victim impact evidence). Evidence by T.S. about how she was emotionally affected by appellant's violence against her is not victim impact evidence because she was the victim of the assaults. *See id.*

Appellant points to *Haley* and *Cantu. See Haley v. State,* 173 S.W.3d 510, 512 (Tex.Crim.App.2005); *Cantu v. State,* 939 S.W.2d 627, 636 (Tex.Crim.App.1997). In both cases, the Court of Criminal Appeals held that the extraneous offense victim impact evidence was not relevant and thus not admissible. *Haley,* 173 S.W.3d at 518; *Cantu,* 939 S.W.2d at 637. *Haley* and *Cantu* each disallowed evidence from the mother of the murdered victim, who was not a victim named in the indictment. *Haley,* 173 S.W.3d at 518; *Cantu,* 939 S.W.2d at 637. In comparison, here, as in *Roberts,* the evidence concerning the extraneous offense is from the victim herself. *Roberts,* 220 S.W.3d at 531. As the Court of Criminal Appeals stated in *Roberts,*

> The evidence presented here was evidence of the effect of a *different offense* on *the victim* (of the extraneous offense), and thus is distinguishable from the situation presented in *Cantu.* The evidence was admissible.

*Id.* (Emphasis in original).

Because the clinical records were admissible to show appellant's commission of unadjudicated extraneous offenses against T.S., the trial court did not err by admitting them and by overruling appellant's objection on the ground that the records were inadmissible victim impact evidence.

We overrule appellant's first issue.

### Admission of Hearsay

■ In his second issue, appellant contends that the trial court erred by ad-

mitting hearsay evidence when Tracy testified. Appellant challenges Tracy's testimony that "intimated that Appellant had placed sleeping medication in the victim's chocolate milk prior to committing the offense." Appellant states that Tracy obtained this information based on hearsay because she learned the information from the children who were at her house on the night of the offense. The State responds that the same evidence was admitted without objection by appellant.

Assuming without deciding that the complained of testimony is inadmissible hearsay, we must determine whether the error harmed appellant. *See* Tex.R.App. P. 44.2(b). We must disregard non-constitutional error that does not affect the appellant's substantial rights. *Haley*, 173 S.W.3d at 518. The appellant's substantial rights are not affected when the error did not have a "substantial and injurious effect or influence" on the fact-finder's decision. *Id.* Evidence that is improperly admitted is harmless if the same or similar evidence is admitted without objection at another point in the trial. *Smith v. State*, 236 S.W.3d 282, 299 (Tex.App.-Houston [1st Dist.], M2007, pet. filed) (citing *Leday v. State*, 983 S.W.2d 713, 717 (Tex.Crim.App. 1998)).

Appellant contends that the trial court erred by allowing Tracy to testify that she was suspicious of appellant giving the children chocolate milk because her daughter heard "crinkling noises" in the kitchen and her daughter reported not being allowed to go into the kitchen. Tracy also testified,

[T]hey said that one of the children wouldn't drink their [sic] milk because it tasted funny. And my daughter wanted it, and he said, no, she couldn't have it.

Appellant did not object to the State's offer of the offense report as State's Exhibit 3. The offense report admitted into evidence contains a statement from Tracy that states,

When I moved in June of this year, I was packing and digging at the top back of the top cabinet in the kitchen. I had to get on the cabinet to see. I stuck my head in and looked. If I was standing on the floor, I could have reached, but couldn't see. There was box [sic] of sleeping pills that were hidden. It is the cabinet we used for medicine for the kids, their cough syrup and things. The sleeping pills were over the counter type. They were inside a small box. There were still some in the box. I think they were blue, but I am not sure. They are the pop out kind in the krinkly [sic] foil. .... I though it was strange we had the pills.

One night after we had moved, [T.S.] and I were talking. She came to me and she said, "momma, [sic] I kind of remember something about that night. I remember Daddy making chocolate milk for us. [V.B.] didn't want her's [sic] because it tasted funny. Daddy said no, I couldn't have it. He said that [A.M.] could have it. [A.M.] didn't want it. [V.B.] had already drank [sic] part of it. Daddy poured it out." Immediately I asked [T.S.] if she remember [sic] her dad making the milk. She said yes. I asked if she was in the kitchen with him. She said he wouldn't let her come in. She said she remember [sic] him opening the medicine cabinet and reaching in. She said she heard him krinkling [sic] something and crushing something. That is all I got out of her. The next morning I called [V.B.'s] grandmother. I told her what she had told me. That is when [V.B.'s Grandmother] said that [V.B.] had told her Aunt Heather she was concerned why she had not woken up earlier. Heather asked her something like had she drank or ate anything

that night that tasted funny. [V.B.] said yea, she drank some bad chocolate milk. So, when I told her about the pills, it all started coming together like pieces to a puzzle.

This evidence is the same or similar to the evidence appellant contends is hearsay. Because it was admitted without objection earlier during the sentencing hearing, the error, if any, is harmless. *Smith,* at 299 (holding that no harm resulted from erroneous admission of inadmissible hearsay when record showed same or similar evidence was admitted without objection) (citing *Leday,* 983 S.W.2d at 717).

We overrule appellant's second issue.

### Conclusion

We affirm the judgment of the trial court.