

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-10-00092-CR

_____

RANDY DALE BARNETT, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the Sixth Judicial District Court
Lamar County, Texas
Trial Court No. 23473

Before Morriss, C.J., Carter and Moseley, JJ.
Opinion by Chief Justice Morriss

OPINION

The turbulent scene in the Sunriser Diner began when a tearful, red-faced, Kitty Rowland dashed into the Sunriser and immediately headed for the ladies' room. Soon thereafter, Randy Dale Barnett strolled into the diner and entered the men's room. After both emerged back into the dining area, Rowland and Barnett settled into a booth by the front door and ordered coffee from waitress Lisa Dale Wagner. The ensuing argument between the pair was witnessed by Wagner and by diner cook Sandy Flynn and regular customer James Bryan. The argument escalated into more tears from Rowland and anger, threats, and verbal abuse from Barnett. When Bryan sought to verbally defuse the argument and threatened to call police, Barnett reportedly pulled a knife and threatened Bryan.

As a result, Barnett was convicted for aggravated assault with a deadly weapon and sentenced to fifty years' imprisonment. On appeal, Barnett urges a number of issues. We affirm the trial court's judgment because (1) sufficient evidence supports Barnett's conviction, (2) ineffective assistance of counsel has not been shown, (3) the officer's testimony that the knife was a deadly weapon was lay testimony, (4) the appellate complaint of bolstering was not preserved, (5) Barnett was not entitled to the appointment of a different attorney, (6) the mistrial motion was properly denied, and (7) a definition of serious bodily injury was not required.

*(1)*     *Sufficient Evidence Supports Barnett's Conviction*

Barnett argues that the evidence is legally insufficient to prove that he used or exhibited a

2

deadly weapon when threatening Bryan. We disagree.

In evaluating legal sufficiency, we review all the evidence in the light most favorable to the trial court's judgment to determine whether any rational jury could have found the essential elements of aggravated assault with a deadly weapon beyond a reasonable doubt. *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)); *Hartsfield v. State*, 305 S.W.3d 859, 863 (Tex. App.—Texarkana 2010, pet. ref'd). Our rigorous legal sufficiency review focuses on the quality of the evidence presented. *Brooks*, 323 S.W.3d at 917 (Cochran, J., concurring). We examine legal sufficiency under the direction of the *Brooks* opinion, while giving deference to the responsibility of the jury "to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (citing *Jackson*, 443 U.S. at 318–19); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).

Legal sufficiency of the evidence is measured by the elements of the offense as defined by a hypothetically correct jury charge. *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997); *see Grotti v. State*, 273 S.W.3d 273, 280 (Tex. Crim. App. 2008); *see also Vega v. State*, 267 S.W.3d 912, 916 (Tex. Crim. App. 2008). Barnett's indictment alleges he "did then and there intentionally or knowingly threaten imminent bodily injury to James Bryan by threatening to cut James Bryan and the defendant did use or exhibit a deadly weapon during the commission of the assault, to-wit: a knife."

3

Barnett committed the offense of aggravated assault if he, intentionally or knowingly threatened Bryan with imminent bodily injury and used or exhibited a deadly weapon during the threat. TEX. PENAL CODE ANN. §§ 22.01(a)(2), 22.02(a)(2) (Vernon 2011). A deadly weapon is anything that, in the manner of its use or intended use, is capable of causing death or serious bodily injury. TEX. PENAL CODE ANN. § 1.07(a)(17)(B) (Vernon 2011).

As the confrontation developed, when Bryan reached for his cell phone, Barnett reportedly shoved him, "brought a pocketknife [sic] out of his pocket, put it up to [Bryan's] ribs and said, I'll cut it from side to—I'll kill you too." Bryan testified that he saw the two inch blade and "very well felt he would cut me." Flynn saw that Barnett "was standing in the doorway with his hand down to his side" with what "appeared to be a knife, the point blade of a knife" in his hands. When Flynn picked up a telephone and dialed 9-1-1, Barnett fled, leaving Rowland behind.

Although Flynn testified she saw a knife, she did not see Barnett attempt to cut or shove Bryan. Instead, she testified Barnett was standing in the doorway when he brandished the knife. Wagner also testified that, while the men were "just kind of standing face-to-face," she did not see Barnett shove Bryan. Wagner also said she did not see a knife. Rowland, who was not at trial, signed an affidavit that stated, "other people there said that [Barnett] pulled out his pocket knife. I never saw him and in the last 3 months [Barnett has] not carried one that I know of."

Here, Bryan testified that Barnett shoved him, placed a two inch blade on the lower part of his ribs, and said, "I'll cut it from side to—I'll kill you too." Bryan's testimony that he "very well

4

felt [Barnett] would cut me," demonstrates the immediacy and nature of the threat. A police officer testified that the pocket knife was a deadly weapon capable of causing death or serious bodily injury.

Although there is evidence contradicting Bryan's testimony, the jury was the exclusive judge of credibility of witnesses, the weight to be given their testimony, and reconciliation of conflicts in the evidence. *Wyatt v. State*, 23 S.W.3d 18, 30 (Tex. Crim. App. 2000). The jury was free to find that Bryan was in the best position to observe Barnett's threats. We find the evidence legally sufficient to establish that Barnett intentionally or knowingly threatened Bryan that he would cut him while brandishing a knife. There was testimony that the knife could be considered a deadly weapon capable of causing death or serious bodily injury. Therefore, we find the evidence legally sufficient to sustain Barnett's conviction for aggravated assault with a deadly weapon. Barnett's first point of error is overruled.

*(2)     Ineffective Assistance of Counsel Has Not Been Shown*

Barnett claims that he received ineffective assistance of counsel in a number of ways.

In order to ultimately prevail in an ineffective assistance of counsel claim, a defendant seeking to challenge counsel's representation must establish that his or her counsel's performance was deficient and prejudiced the defense. *Smith v. State*, 286 S.W.3d 333, 340 (Tex. Crim. App. 2009) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Mitchell v. State*, 68 S.W.3d 640, 642 (Tex. Crim. App. 2002)). Any allegation of ineffectiveness of counsel must be firmly

5

founded in the record. *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005); *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999); *Wallace v. State*, 75 S.W.3d 576, 589 (Tex. App.—Texarkana 2002), *aff'd*, 106 S.W.3d 103 (Tex. Crim. App. 2003). From the record received by this Court, which includes the hearing on Barnett's motion for new trial, Barnett bears the burden of proving by a preponderance of the evidence that his counsel was ineffective. *Goodspeed*, 187 S.W.3d at 392; *Thompson*, 9 S.W.3d at 813; *Cannon v. State*, 668 S.W.2d 401, 403 (Tex. Crim. App. 1984).

We apply the two-pronged *Strickland* test handed down by the United States Supreme Court to determine whether Barnett received ineffective assistance of counsel. *Strickland*, 466 U.S. 668. Failure to satisfy either prong of the *Strickland* test is fatal. *Ex parte Martinez*, 195 S.W.3d 713, 730 n.14 (Tex. Crim. App. 2006). Thus, we need not examine both *Strickland* prongs if one cannot be met. *Strickland*, 466 U.S. at 697.

First, Barnett must show that counsel's performance fell below an objective standard of reasonableness in light of prevailing professional norms. *Id.* at 687–88. There is a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance and that the challenged action could be considered sound trial strategy. *Id.* at 689; *Ex parte White*, 160 S.W.3d 46, 51 (Tex. Crim. App. 2004); *Tong v. State*, 25 S.W.3d 707, 712 (Tex. Crim. App. 2000). Therefore, we will not second-guess the strategy of Barnett's counsel at trial through hindsight. *Blott v. State*, 588 S.W.2d 588, 592 (Tex. Crim. App. 1979); *Hall v. State*,

6

161 S.W.3d 142, 152 (Tex. App.—Texarkana 2005, pet. ref'd).

The second *Strickland* prejudice prong requires a showing that, but for counsel's unprofessional error, there is a reasonable probability that the result of the proceeding would have been different. *Strickland*, 466 U.S. at 687–88. A "reasonable probability" is a probability sufficient to undermine confidence in the outcome, meaning that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. *Smith*, 286 S.W.3d at 340.

Ineffective assistance of counsel has not been shown to have occurred in any way asserted on appeal, because (a) failure to get Rowland's testimony may have been reasonable trial strategy, (b) failure to seek a finding on lesser included offenses was not substandard, (c) failure to find and submit mitigating evidence was not substandard, and (d) not objecting to particular evidence was not substandard. We examine each complaint in turn.

*a.      Failure to Get Rowland's Testimony May Have Been Reasonable Trial Strategy*

Barnett asserts, on appeal as he did in his motion for new trial, that his trial counsel rendered ineffective assistance by failing to request a continuance to locate Rowland and in failing to subpoena Rowland. A claim of ineffective assistance based on trial counsel's failure to call a witness cannot succeed absent a showing that the witness was available to testify and that the witness' testimony would have benefitted the defense. *See Ex parte Ramirez*, 280 S.W.3d 848, 853 (Tex. Crim. App. 2007).

7

During the hearing on the motion for new trial, trial counsel, Jerry Coyle, testified that he had not interviewed Rowland because he was unable to locate her. Although Rowland gave a favorable written statement, Coyle believed "that if she were to actually testify, it would be harmful," due to the volatile nature of their relationship. This opinion was developed after Coyle's conversations with Barnett in which "he and I pretty much came to the mutual decision that it was a mistake to have her in the courtroom. In fact, he told me specifically, I don't want you to call [Rowland]." Barnett had clarified to Coyle that "he and Mrs. Rowland had gotten into an argument and he had hit her, struck her. There was a misdemeanor charge to that effect, that he essentially beat her up. He thought that she was not a reliable witness."

Further information came from a private investigator hired by Coyle, providing perhaps the most compelling reason why Rowland was not obtained as a witness. The investigator testified that Rowland had given him the knife which was used in this case and that he had kept it in his office. The investigator told Coyle about the knife, but its existence was not disclosed to the State, and was instead kept unrevealed by the investigator after a conference with Coyle. After the investigator's testimony, Coyle was recalled and explained he "was happy that [Rowland] went missing" because "she was going to admit that she had the knife."

We find that Coyle's conduct in choosing not to call a potentially damaging witness was probably wise. It at least fell within the wide range of reasonable professional assistance and constituted sound trial strategy, especially since he was aware Rowland had possessed the knife in

8

question at one point. Therefore, we find that Barnett cannot meet the first prong of the *Strickland* test with respect to this ground of ineffective assistance.

        *b.        Failure to Seek Finding on Lesser Included Offenses Was Not Substandard*

Coyle testified that, although Barnett believed he should be charged with a lesser included offense, counsel's opinion was that he would likely be convicted of aggravated assault with a deadly weapon. Counsel's response as to why he failed to request lesser included offenses was, "I didn't think of it," and, "I did not specifically look at the question of lesser offenses." Coyle testified that he would have requested lesser included offenses had he "thought about it."

However, Barnett filed a pro se motion mentioning terroristic threat as a lesser included offense, which counsel read before trial. The clerk's record also included the police report from the Sunriser incident, which listed the offense as terroristic threat and assault. When questioned about the motion, counsel then stated that he "did discuss" the lesser included offenses.

Assuming that counsel's reasoning—that he did not consider lesser included offenses—allows Barnett to meet the first *Strickland* prong, we examine whether Barnett would be entitled to a lesser-included-offense instruction for terroristic threat and assault. To determine if a defendant is entitled to a lesser-included-offense instruction, a two-prong test applies. *Hall v. State*, 158 S.W.3d 470, 473 (Tex. Crim. App. 2005). First, the lesser included offense must be included within the proof necessary to establish the offense charged. *Id.*; *Hampton v. State*, 109 S.W.3d 437, 440 (Tex. Crim. App. 2003); *Lofton v. State*, 45 S.W.3d 649, 651 (Tex. Crim. App.

9

2001); *Bignall v. State*, 887 S.W.2d 21, 23 (Tex. Crim. App. 1994). If the person uses or exhibits a deadly weapon while committing assault, he or she commits aggravated assault. TEX. PENAL CODE ANN. § 22.02(a)(2).

A person commits assault if he or she "intentionally or knowingly threatens another with imminent bodily injury." TEX. PENAL CODE ANN. § 22.01(a)(2). Assault is a lesser included offense of aggravated assault.

A person commits the offense of terroristic threat if "he threatens to commit any offense involving violence to any person or property with intent to: . . . (2) place any person in fear of imminent serious bodily injury." TEX. PENAL CODE ANN. § 22.07(a)(2) (Vernon 2011). Terroristic threat is not a lesser included offense in this case, because terroristic threat requires proof of the intent to place someone in fear of imminent serious bodily injury—proof that is not required for the charge of aggravated assault in this case. *See* TEX. CODE CRIM. PROC. ANN. art. 37.09 (Vernon 2006); *see also Runnels v. State*, No. 05-98-01590-CR, 2000 WL 1256305, at *4 (Tex. App.—Dallas Sept. 6, 2000, pet. ref'd) (mem. op., not designated for publication); *Jones v. State*, No. 05-96-01415-CR, 1998 WL 91298, at *4–5 (Tex. App.—Dallas Feb. 26, 1998, no pet.) (not designated for publication).[1]

As to the asserted right to a lesser included offense instruction on assault, we move to consider the second prong. To establish that second prong, some evidence must exist in the

---

[1]Although these unpublished cases have no precedential value, we may take guidance from them "as an aid in developing reasoning that may be employed." *Carillo v. State*, 98 S.W.3d 789, 794 (Tex. App.—Amarillo 2003, pet. ref'd).

record that would permit a jury rationally to find that, if the defendant is guilty, he or she is guilty only of the lesser included offense. *Hampton*, 109 S.W.3d at 440. In other words, there must be some evidence from which a rational jury could acquit Barnett of aggravated assault while convicting him of the lesser included offense of assault. In making this decision, we evaluate the evidence in the context of the entire record, and do not consider whether the evidence is credible, controverted, or in conflict with other evidence. *Id*.

We have already found the evidence sufficient to convict Barnett of aggravated assault. We note that one element distinguishing aggravated assault from assault is the use or exhibition of a deadly weapon. In his brief, Barnett argues that: no evidence was offered as to the knife's sharpness; Flynn[2] did not see "the Appellant hold the pocket knife near the complainant but rather saw the tip of the knife in Appellant's hand which he held at his side"; although Flynn was a few feet away, "she never saw the Appellant try to cut Bryan nor did she see Appellant shove him"; and Wagner did not see anything in Barnett's hands and testified he did not shove Bryan. Even assuming these statements were true, they do not constitute evidence that Barnett did not hold a knife to Bryan's person or otherwise threaten him with it. The statements made by Flynn and Wagner address only their observations from their respective locations in the Sunriser and did not negate the allegation that Barnett held a pocket knife to Bryan's ribs or threatened him while displaying it. In other words, the brief does not reference evidence from which a rational jury

---

[2]Flynn testified she saw Barnett "standing in the doorway with his hand down to his side" after she "turned back around," meaning that she did not witness the entire altercation. Wagner also testified that she did not witness the entire altercation.

could acquit Barnett of aggravated assault while convicting him of the lesser included offense of assault.

We conclude that, because Barnett cannot meet the *Strickland* second prong, Coyle's failure to request an instruction on the lesser included offense of assault did not deny Barnett effective assistance of counsel.

### c.    Failure to Find and Submit Mitigating Evidence Was Not Substandard

Next, Barnett's motion and affidavit alleged that counsel failed to offer any mitigating evidence at punishment, including evidence that Barnett had been diagnosed as having various mental illnesses, was bipolar, and "had treatment at MHMR."  Barnett's affidavit additionally stated, "In fact, my attorney just asked me if I wanted to tell the jury anything.  I did not know what to say.  He just did not ask me any questions."

We interpret Barnett's motion and affidavit as alleging that counsel generally failed to investigate the possibility of mitigating evidence, including Barnett's mental condition.  "The sentencing stage of any case, regardless of the potential punishment, is 'the time at which for many defendants the most important services of the entire proceeding can be performed.'"  *Milburn v. State*, 15 S.W.3d 267, 269 (Tex. App.—Houston [1st Dist.] 2000, pet. ref'd) (quoting *Vela v. Estelle*, 708 F.2d 954, 964 (5th Cir.1983)).  "Where the potential punishment is life imprisonment, as in the instant matter, the sentencing proceeding takes on added importance."  *Id*. (citing *Vela*, 708 F.2d at 964).  In a case where the issue is "whether trial counsel conducted an

adequate investigation for potential mitigating evidence, 'we focus on whether the investigation supporting counsel's decision not to introduce mitigating evidence of [Barnett's] background was itself reasonable.'" *Freeman v. State*, 167 S.W.3d 114, 117 (Tex. App.—Waco 2005, no pet.) (quoting *Wiggins v. Smith*, 539 U.S. 510, 523 (2003)). While "*Strickland* does not require counsel to investigate every conceivable line of mitigating evidence," "counsel can . . . make a reasonable decision to forego presentation of mitigating evidence [only] after evaluating available testimony and determining that it would not be helpful." *Wiggins*, 539 U.S. at 533; *Milburn*, 15 S.W.3d at 270; *see also Williams v. Taylor*, 529 U.S. 362 (2000). Counsel's representation will be deficient, however, if a sufficient pretrial investigation is not performed. *Wiggins*, 539 U.S. at 521; *Freeman*, 167 S.W.3d at 117.

Barnett's medical records from Lakes Regional MHMR Center demonstrate he was diagnosed with bipolar disorder May 22, 2009, a few months before the incident at the Sunriser. Barnett, who had been recently released from prison after twelve years and could not find employment, also experienced depression, sleep disorder, "problems not eating (reports has lost 45 lbs in 4 months.) isolation, agitation, anger, anxiety, crying spells, racing thoughts, feelings of hopelessness/worthlessness." Coyle stated that had he known Barnett's medical records revealed such conditions, he would have placed that evidence in front of the jury during punishment. However, Coyle did investigate and inquire into the possibility of mitigating evidence.

At the hearing on the motion for new trial, Coyle testified:

13

> Mr. Barnett was a difficult client. I talked to him at length as long as I could because he was really hard to talk to about what I could find to try to mitigate potential punishment. I didn't find anything. I finally hit on the only possibility was to talk to his mother who lives here in Lamar County, Paris[,] I believe, as I recall. I talked to his mother. I talked to her on the phone. I tried to persuade her to come down and testify on his behalf. She wouldn't come.

Coyle admitted that he did not specifically inquire about Barnett's past medical treatment. Counsel is not required, however, to always investigate a defendant's psychiatric history to meet the effective-assistance-of-counsel standard.[3] *See Purchase v. State*, 84 S.W.3d 696, 700–01 (Tex. App.—Houston [14th Dist.] 2002, pet. ref'd). Coyle stated that, although Barnett was difficult, counsel was not put on notice of any potential mental issues. The investigator hired by counsel also did not discover any mitigating evidence. When assessing the reasonableness of counsel's investigation, we "must consider the quantum of evidence already known to counsel and whether the known evidence would lead a reasonable attorney to investigate further." *Martinez*, 195 S.W.3d at 721 (citing *Wiggins*, 539 U.S. at 527). Barnett's briefing does not suggest any facts which would lead a reasonable attorney to investigate further, and the record reveals that, although counsel spoke with Barnett and his mother regarding the possibility of mitigating evidence, none was uncovered.

An investigation into every defendant's mental health history is not required. Because

---

[3]During the hearing on the motion for new trial, the investigator hired by Coyle stated that Rowland had informed him "they were both extremely opposite of each other. She said they were—I don't know if she used the term bipolar. She said she was bipolar. She says, when I'm up, he's got to be down—when he's down, I've got to be up, and when I'm down, he's got to be up, to protect each other." We do not know whether this specific communication was relayed to counsel.

counsel conducted an investigation, but no evidence of mental illness was revealed, Barnett cannot meet the first *Strickland* prong of showing counsel's substandard actions.   We overrule this issue.

### d.       *Not Objecting to Particular Evidence Was Not Substandard*

Barnett complains of a few pieces of evidence, the failure to object to which is alleged to be ineffective on the part of his trial counsel.   Failing to object to the testimony specified by Barnett's appellate brief was not substandard, because (i) prison disciplinary records may have been admissible, (ii) the undisclosed "expert" witness did not testify as an expert, (iii) failing to object to evidence of prior arrests may have been reasonable trial strategy, (iv) the voir dire statement on community supervision was not objectionable, (v) not objecting to Bryan's testimony may have been reasonable trial strategy, (vi) not objecting to photographs of Rowland's injuries may have been reasonable trial strategy, and (vii) Poole's victim-impact testimony was admissible.

### (i)       *Prison Disciplinary Records May Have Been Admissible*

Barnett complains that counsel failed to object to testimony the State elicited from Barnett, during the punishment phase, regarding his prison and jail disciplinary violations.   The brief suggests that Coyle should have objected to the testimony on the basis that this evidence was not timely disclosed.   The Texas Code of Criminal Procedure provides:

> evidence may be offered by the state and the defendant as to any matter the court deems relevant to sentencing, including but not limited to the prior criminal record of the defendant, his general reputation, his character, an opinion regarding his character, the circumstances of the offense for which he is being tried, and,

15

> notwithstanding Rules 404 and 405, Texas Rules of Evidence, any other evidence of an extraneous crime or bad act that is shown beyond a reasonable doubt by evidence to have been committed by the defendant or for which he could be held criminally responsible, regardless of whether he has previously been charged with or finally convicted of the crime or act.

TEX. CODE CRIM. PROC. ANN. art. 37.07, § 3(a)(1) (Vernon Supp. 2010). Notice of intent to introduce such evidence must be given by the State if "the defendant makes a timely request to the attorney representing the state for the notice." TEX. CODE CRIM. PROC. ANN. art. 37.07, § 3(g) (Vernon Supp. 2010).

The record is silent on why counsel failed to object, and we will not speculate on counsel's trial strategy. *See Jackson v. State*, 877 S.W.2d 768, 771 (Tex. Crim. App. 1994). The State's notice of intent to introduce extraneous offenses stated, "The State intends to introduce each and every extraneous offense, crime, wrong and act of the Defendant noted below as well as those identified in offense reports or other documents and recording presented in the State's file." The trial court's discovery order directed the State to disclose "[t]he criminal history of the Defendant as recorded in the TCIC[4] records together with all other crimes, wrongs and acts of which the prosecution has actual knowledge." Therefore, it is quite possible that counsel failed to object to these extraneous offenses on the basis of notice under Article 37.07 of the Texas Code of Criminal Procedure because he had knowledge of such offenses.

We find Barnett has failed to meet the first *Strickland* prong as to this evidence.

*(ii)     The Undisclosed "Expert" Witness Did Not Testify as an Expert*

---

[4]TCIC may refer to the Texas Crime Information Center.

16

Barnett also complains that, although the testifying officer was designated as an expert on fingerprint identification, he was not disclosed as an expert witness on the issue of whether the pocket knife constituted a deadly weapon. Thus, Barnett argues his counsel's failure to object to the officer's testimony as an expert witness on the issue of the deadly-weapon finding constituted ineffective assistance of counsel.

Before the police officer testified to his opinion that the knife was a deadly weapon, Coyle lodged the objection that, "Your Honor, I object. I don't think this witness is qualified as an expert under the law." After Coyle elicited testimony from the officer that no special training or expertise is required to draw a conclusion that an object is a deadly weapon, the trial court sustained the objection and instructed the prosecution, "You'll not designate him as an expert." However, the court allowed testimony "to the fact that a knife can be a deadly weapon."

Although the record does not state why Coyle did not object that the officer was not designated as an expert on the deadly-weapon issue, we assume it was because the officer testified as just a lay witness on the deadly-weapon issue per the trial court's ruling. We may also assume that Coyle did not object because the law allows the fact-finder to determine whether an object was a deadly weapon based on lay witness testimony alone. *Cruz v. State*, 576 S.W.2d 841, 842 (Tex. Crim. App. 1979); *Bailey v. State*, 46 S.W.3d 487, 492 (Tex. App.—Corpus Christi 2001, pet. ref'd); *Bui v. State*, 964 S.W.2d 335, 345 (Tex. App.—Texarkana 1998, pet. ref'd).

Barnett has failed to meet the first *Strickland* prong as to this evidence.

17

*(iii)*    *Failing to Object to Evidence of Prior Arrest May Have Been Reasonable Trial Strategy*

Barnett argues that counsel should have objected to the following direct testimony by Bryan on the basis that it introduced an extraneous offense:

A.    . . . I told him I was going to call the law if he didn't settle down.

Q.    What was [Barnett's] response to that?

A.    He—call the law, I've been arrested before.

Because the record is silent as to why counsel failed to object, we employ the strong presumption that Coyle's conduct, in possibly refusing to draw the jury's attention to the extraneous offense through an objection, could be considered sound trial strategy. Also, the constitutional right to counsel does not mean Barnett's counsel was required to be errorless. *Alberts v. State*, 302 S.W.3d 495, 507 (Tex. App.—Texarkana 2009, no pet.) (citing *Ingham v. State*, 679 S.W.2d 503, 509 (Tex. Crim. App. 1984)). For this reason, an isolated failure to object to improper evidence does not constitute ineffective assistance of counsel. *Id.* Therefore, we find Barnett cannot meet the first *Strickland* prong.

*(iv)*    *The Voir Dire Statement on Community Supervision Was Not Objectionable*

Barnett's brief complains of the following:

During her voir dire, the prosecutor informed the jury that the range of punishment for an aggravated assault with a deadly weapon is a second degree felony. She then informed the jury that if the State proved a defendant had a prior conviction the

18

punishment range increased from five to 99 years or life. The prosecutor went on to ask the jurors if they could consider the full range of punishment from 2 years to life in prison. The prosecutor went on to make the following comment:

Q. Is there anyone here who cannot consider the full range of punishment? This is really important? Probation is not an option in this case, we're talking about TDC time. Okay?

(References to record omitted.) Barnett argues "the prosecutor specifically implied to the jury that Appellant had been convicted of a crime," because "[h]ad the State been unable to prove a prior felony conviction, then the range of punishment would have included the possibility of probation."

We do not agree with Barnett's premise that the State necessarily implied Barnett's prior conviction when stating community supervision was not an option. The option of community supervision, even if otherwise available, may become unavailable under other circumstances, such as a defendant's failure to file an application for community supervision or his or her decision to forego that option.

In any event, both sides have the right to discuss range of punishment.

The Texas Court of Criminal Appeals has stated repeatedly that both the state and the accused have the right to inform the jury of the range of punishment applicable to an offense, including a range that is enhanced, and to qualify the panel on the full range of punishment. *Martinez v. State*, 588 S.W.2d 954, 956 (Tex. Crim. App. [Panel Op.] 1979); *Bevill v. State*, 573 S.W.2d 781, 783 (Tex. Crim. App. 1978). Under this formulation, the state may inform the jury panel of the range of punishment applicable if the state was to prove a prior conviction for enhancement purposes, but the state may not inform the jury of any specific allegations contained in an enhancement paragraph of a particular defendant's indictment. *Frausto v. State*, 642 S.W.2d 506, 509 (Tex. Crim. App. [Panel Op.] 1982); *Estes v. State*, 873

19

S.W.2d 771, 773 (Tex. App.—Fort Worth 1994, pet. ref'd).

*Jackson v. State*, 285 S.W.3d 181, 183–84 (Tex. App.—Texarkana 2009, no pet.). Because we do not have counsel's reasons for failing to object, we may presume that it was due to a sound trial strategy. Coyle may have believed, as do we, that the State's statements did not inform the jury that Barnett was a felon, but simply discuss range of punishment. Therefore, we find Barnett cannot meet the first *Strickland* prong on this issue.

> ### (v) *Not Objecting to Bryan's Testimony May Have Been Reasonable Trial Strategy*

Bryan testified that Barnett "shoved me away, I guess to prevent me from getting my cell phone out." Bryan also testified, "I very well felt he would cut me." Barnett argues that counsel's failure to object to these allegedly speculative statements constituted ineffective assistance of counsel.

A witness can testify in the form of an opinion if that opinion is rationally based on their perception and is helpful to the determination of a fact issue. TEX. R. EVID. 701; *White*, 160 S.W.3d at 53 (counsel not deficient in failing to object to statement by witness of her belief defendant intentionally drove over victim). Here, Bryan's statement that Barnett shoved him to prevent Bryan from calling the authorities came after his testimony that he "told [Barnett he] was going to call the law" and that Bryan "reached for my cell phone." It appears that Bryan was testifying based on his perception and that such testimony was relevant to rebut Barnett's claim of self-defense, specifically that he shoved Bryan because he believed Bryan was reaching for a

knife.  Counsel may have also felt Bryan's opinion that Barnett "would cut me" was based on perception and helpful to the determination of whether Bryan felt threatened by Barnett's actions. Again, we do not speculate to find trial counsel ineffective when the record is silent on counsel's reasoning or strategy.  *See Wood v. State*, 260 S.W.3d 146, 148 (Tex. App.—Houston [1st Dist.] 2008, no pet.).

Also, Barnett complains that Coyle failed to ask for a mistrial after his objection to the following statement was sustained:  "I believe that—if 911 hadn't been called and the other patrons of the restaurant and employees come to my aid, I would've been cut."  After Coyle's objection was sustained, the court instructed the jury to disregard the statement.  It is possible that counsel failed to seek a mistrial because (1) he did not believe Bryan's statement was so emotionally inflammatory that the curative instruction was insufficient to remove prejudice, (2) he did not want to risk any negative impression which may have been held by the jury if the motion for mistrial was denied, or (3) he presumed the jury would follow the court's instructions.  *See Gardner v. State*, 730 S.W.2d 675, 696 (Tex. Crim. App. 1987).

We find that Barnett failed to meet the first *Strickland* prong on this issue.

Barnett complains that Coyle failed to object during punishment to photographs of Rowland's injuries, which a police officer, from her personal knowledge, testified appeared on Rowland on the day of the Sunriser incident.  Barnett argues that, because Rowland was not available to testify, "the State had no evidence that Appellant had inflicted any injuries on Rowland.  Therefore, the evidence was irrelevant and constituted hearsay."  Barnett agrees that the State can introduce evidence of extraneous offenses "regardless of whether [Barnett] was previously charged" if the act was committed by him.

Again, we are not provided with counsel's reasons for failing to object.  Counsel was aware, however, that Barnett planned to testify during punishment.  Barnett did not deny becoming involved in a physical altercation with Rowland.  He stated that they started "arguing about . . . whether we should go to the casino" and that Rowland "was driving real fast talking about she was going to kill me and her both.  She was going to commit suicide.  I reached over and killed the truck."  Barnett claimed they began fighting over car keys.  To describe the altercation, he used the following words and phrases:  "we were wrestling," "[w]e struggled," "I tried to hold her in the truck," "I finally pushed her off," and "I'm just trying to hold her, really.  That's how the red marks got on her face and her nose."  Barnett admitted that the injuries

22

depicted on Rowland were caused by him, but attempted to justify the actions causing the injuries as innocent "struggle[s] over the key."

Therefore, it is possible that counsel decided not to object to the photographs because he was aware Barnett was going to testify and that, if any objection to the photographs were sustained during the officer's testimony, they could be reintroduced during Barnett's testimony. We find Barnett has failed to meet the first prong of *Strickland* on this issue.

### (vii) Poole's Victim-Impact Testimony Was Admissible

Shelia Poole was a victim of an earlier assault by Barnett. She testified, "[Barnett] carried me out to the woods and started beating . . . [a]nd he beat me over and over and over." Poole said Barnett beat her with

> [e]verything he could find, fly swatters, toy guns, his fists. He put rocks in a shirt—he says, it was a shirt—beat me with that. Drug me back and forth. . . . [f]rom one spot to the other in the woods. He would jump up and down on my back. I would pass out. Whenever I would come to, he would still be beating me. Finally he got tired. After about 36 hours or something like that, he got tired and laid down and I got away. . . . He beat me between my legs with a toy gun. . . . [and said] he would make it where no other man would ever want to touch me.

Barnett takes exception to Poole's testimony recalling, "I was bruised from head to toe, all over my body. I did get a head injury out of it. That's why I'm on disability." He also complains that Poole testified that she was not able to work and lives on disability as a result of the incident. Barnett argues that counsel was ineffective in failing to object to Poole's statements as impermissible victim-impact testimony. He cites authority that, although the trial court has wide

23

discretion to admit relevant evidence during the punishment phase of trial, victim-impact testimony regarding a victim not named in the indictment is inadmissible. *Haley v. State*, 173 S.W.3d 510, 518 (Tex. Crim. App. 2005) (evidence from mother of extraneous murder victim disallowed); *Cantu v. State*, 939 S.W.2d 627, 637 (Tex. Crim. App. 1997) (same). Note, however, the scope of the definition. Victim-impact evidence is that which shows the collateral effect of an offense—that is, the effect on people other than the victim of the offense—whether the offense being referenced by the evidence is the charged offense or an extraneous one. *Roberts v. State*, 220 S.W.3d 521, 531 (Tex. Crim. App. 2007). Thus, evidence from victims of extraneous offenses is admissible; it is not victim-impact evidence. *Smith v. State*, 238 S.W.3d 512, 515 (Tex. App.—Houston [1st Dist.] 2007, no pet.) (citing *Roberts*, 220 S.W.3d at 531) (testimony in sentencing phase of trial by victim of extraneous robbery who described how robbery emotionally affected her not victim-impact evidence). Because Poole's testimony was admissible, we conclude Coyle was not required to object to it. Barnett cannot meet the first *Strickland* prong as to this evidence.[5]

---

[5]Had we found that Barnett was able to meet the first prong of *Strickland* on any claim of ineffective assistance of counsel during punishment, he would also be required to demonstrate that there was a reasonable probability that the result of the proceeding would have been different absent counsel's error. *Strickland*, 466 U.S. at 687–88. We would look to the sentence to begin the analysis. We note that, after finding Barnett had previously been convicted of two felonies, the jury was instructed that the punishment range was "not less than twenty five (25) years nor more than ninety-nine (99) years or Life." The jury assessed punishment of fifty years' imprisonment. We would also look to the evidence presented during punishment. The jury's punishment assessment followed proof of prior convictions including one charge of aggravated assault with a deadly weapon, one charge of injury to a child, one charge of theft, two charges of possession of marihuana, one charge of criminal mischief, one charge of proof of financial responsibility, one charge of driving while intoxicated, and one charge of failure to maintain insurance.

Because Barnett cannot meet the requirements of *Strickland* for any of his ineffective-assistance-of-counsel claims omitted from the discussion during the trial court's hearing on the motion for new trial, we overrule these ineffective assistance points of error.

*(3)    Officer's Testimony that the Knife Was a Deadly Weapon Was Lay Testimony*

Barnett complains that the trial court erred in allowing a police officer to testify as an expert concerning the deadly weapon issue. This point is without merit. The record demonstrates that, after an objection by Coyle, and argument that an expert is not required for testimony on the deadly weapon issue, the trial court ruled, "You'll not designate him as an expert." The trial court allowed the officer to testify "to the fact that a knife can be a deadly weapon" as a lay witness. *See Cruz*, 576 S.W.2d at 842–43; *Bui*, 964 S.W.2d at 345 (expert testimony not required for deadly weapon finding). We overrule this point of error.

*(4)    Appellate Complaint of Bolstering Was Not Preserved*

Barnett next argues that the trial court erred in allowing the police officer's testimony over objections that the testimony constituted improper bolstering. The complained-of exchange is set forth below:

> [State's Attorney]:    Your Honor, I think we've laid pretty good predicate for Sergeant Springer's qualifications. He is qualified to render an expert opinion on whether or not a weapon was used in a manner that it was capable of causing death or serious bodily injury. He is capable of describing and giving opinion testimony of the usage of a deadly weapon, sir. We move that he be designated as an expert.
>
> [Defense Attorney]:    Your Honor, I object. The witness has testified that

25

it doesn't require special training, but this is something within the ordinary body of knowledge of any ordinary person. It depends entirely on the circumstance. It doesn't require an expert. What they're trying to do is bolster their testimony by putting on an expert witness to testify to something that's within the ordinary province of the jury. I object to using expert testimony just to bolster their case.

Coyle's objection to the court regarding bolstering complained only of the officer's testimony as an expert witness. The trial court sustained counsel's objection. Because Barnett received the relief requested, this point of error is not preserved for our review. TEX. R. APP. P. 33.1.[6]

*(5)*    *Barnett Was Not Entitled to the Appointment of a Different Attorney*

After two previous attorneys had withdrawn from their representation of Barnett, the trial court appointed Coyle to the case. Barnett filed a pro se motion "for the Court to appoint either new counsel or allow him to proceed *pro se*." "After the court made it clear that [Barnett] would be allowed to represent himself but would be held to the standards of a lawyer, [Barnett] asked to allow trial counsel to remain." Prior to voir dire, the following exchange occurred:

> [Defendant]:    I have been forced to keep this lawyer, yes. . . .    I agreed not to represent myself.

> THE COURT:          I'm denying all your motions.

> [State's Attorney]:     Mr. Barnett, we're not going to be back here on ineffective assistance of counsel. You have an absolute right to represent yourself.

> [Defendant]:    He is ineffective.

---

[6]Moreover, improper bolstering occurs "when one item of evidence is improperly used by a party to add credence or weight to some earlier unimpeached piece of evidence offered by the same party." *Guerra v. State*, 771 S.W.2d 453, 474 (Tex. Crim. App. 1988). Barnett's brief fails to address what "earlier unimpeached piece of evidence" would be bolstered by the officer's testimony. Thus, Barnett's briefing would also be inadequate to preserve this error for our review.

26

[State's Attorney]: You have an absolute right to represent yourself, and we brought that to your attention.

[Defendant]: I don't want to represent myself, but this guy is ineffective. He says so in that motion that he filed to withdraw, and I filed a motion to terminate him….

[Defense Attorney]: . . . Your Honor, I renew my motion to withdraw. If Mr. Barnett wants me off the case, that's fine with me.

The trial court denied the motion to withdraw.

We review a trial court's denial of a motion to withdraw for abuse of discretion. *King v. State*, 29 S.W.3d 556, 566 (Tex. Crim. App. 2000). A trial judge is under no duty to search until he finds an attorney agreeable to the defendant. *Lyles v. State*, 582 S.W.2d 138, 141 (Tex. Crim. App. [Panel Op.] 1979); *Webb v. State*, 533 S.W.2d 780, 784 (Tex. Crim. App. 1976). Once the court has appointed an attorney to represent the indigent defendant, the defendant has been accorded the protections provided under the Sixth and Fourteenth Amendments and Article 26.04 of the Texas Code of Criminal Procedure, and the defendant then carries the burden of proving entitlement to a change of counsel. *Webb*, 533 S.W.2d at 784. Barnett argues that the trial court erred in continuing Coyle's representation because "[t]he relationship between Appellant and trial counsel was so adverse as to render counsel ineffective in representing the Appellant." The record demonstrates that Barnett was a difficult client, which resulted in the trial court granting two motions to withdraw from attorneys previously appointed to represent Barnett. However, because "personality conflicts and disagreements concerning trial strategy are typically not valid

27

grounds for withdrawal," we find that the trial court did not abuse its discretion in declining appointment of new counsel on the day of trial. *King*, 29 S.W.3d at 566. This point of error is overruled.

## (6)    *The Mistrial Motion Was Properly Denied*

The trial court had granted a motion in limine to prevent introduction of evidence that Barnett had given Rowland a bullet with her name on it after the incident, and had determined that such evidence was irrelevant. While questioning a witness, the State asked, "Did you see that bullet that [Rowland] had?" The question drew an immediate objection and counsel "request[ed] an instruction of the jury and mov[ed] for a mistrial." The trial court instructed the jury, "You disregard anything she said about a bullet or whatever."

We review a trial court's denial of a motion for mistrial under an abuse-of-discretion standard and must uphold the trial court's ruling if it was within the zone of reasonable disagreement. *Towery v. State*, 262 S.W.3d 586, 598 (Tex. App.—Texarkana 2008, pet. ref'd) (citing *Archie v. State*, 221 S.W.3d 695, 699 (Tex. Crim. App. 2007)). Mistrial is an appropriate remedy only when objectionable events "are so emotionally inflammatory that curative instructions are not likely to prevent the jury from becoming unfairly prejudiced against the defendant." *Hines v. State*, 269 S.W.3d 209, 215 (Tex. App.—Texarkana 2008, pet. ref'd, untimely filed; pet. ref'd [2 pets.]) (quoting *Young v. State*, 137 S.W.3d 65, 71 (Tex. Crim. App. 2004)).

28

Here, the trial court instructed the jury to disregard the question about the bullet, an instruction we presume the jury followed. *Ladd v. State*, 3 S.W.3d 547, 567 (Tex. Crim. App. 1999). When evaluating the effectiveness of a curative instruction to disregard, we look to "the nature of the [improper comment]; the persistence of the prosecutor; the flagrancy of the violation; the particular instruction given; the weight of the incriminating evidence; and the harm to the accused as measured by the severity of the sentence." *Searcy v. State*, 231 S.W.3d 539, 549 n.10 (Tex. App.—Texarkana 2007, pet. ref'd) (quoting *Roberson v. State*, 100 S.W.3d 36, 41 (Tex. App.—Waco 2002, pet. ref'd)).

The witness did not respond to the State's question. No reference was made in the question that Barnett had provided Rowland with the bullet, or that the bullet had her name on it. The State apologized for the mistake and did not mention the bullet thereafter. The jury was instructed to disregard anything said about the bullet, which the court had ruled previously was irrelevant. Because the question asked, by itself, did not indicate any bad act by Barnett, we find that the instruction cured any improper comment. Because the curative instruction was sufficient, we conclude the trial court did not err in denying the motion for mistrial.

This point of error is overruled.

*(7)*     *A Definition of Serious Bodily Injury Was Not Required*

Barnett also asserts that the trial court erred by failing to include the statutory definition of "serious bodily injury" in the jury charge. A jury charge should set forth the law applicable to the

29

case. TEX. CODE CRIM. PROC. ANN. art. 36.14 (Vernon 2007). When alleged jury charge errors are brought forward on appeal, we must first determine whether they are error. *Abdnor v. State*, 871 S.W.2d 726, 731 (Tex. Crim. App. 1994); *Remsburg v. State*, 219 S.W.3d 541, 547 (Tex. App.—Texarkana 2007, pet. ref'd). We then determine whether the appellant preserved the alleged error at trial. *Remsburg*, 219 S.W.3d at 547. Because Barnett did not object during trial, "the 'appropriate standard [of review] is the one for fundamental error in the charge.'" *Id.* (citing *Jimenez v. State*, 32 S.W.3d 233, 239 (Tex. Crim. App. 2000)); *see also Stokes v. State*, 74 S.W.3d 48, 50 (Tex. App.—Texarkana, pet. ref'd). This standard means we should not reverse the trial court's judgment "unless the error appearing from the record was calculated to injure the rights of the defendant, or unless it appears from the record that the defendant has not had a fair and impartial trial." *Id.* (citing TEX. CODE CRIM. PROC. ANN. art. 36.19 (Vernon 2006); *Abdnor*, 871 S.W.2d at 732)). The degree of harm demonstrated must be actual, not merely theoretical. *Almanza v. State*, 686 S.W.2d 157, 174 (Tex. Crim. App. 1984) (op. on reh'g); *Taylor v. State*, 146 S.W.3d 801, 804 (Tex. App.—Texarkana 2004, pet. ref'd).

Barnett's claim is analogous to the facts of *Remsburg*. Remsburg was charged with aggravated assault on a public servant. *Remsburg*, 219 S.W.3d at 547. The indictment alleged that Remsburg "did intentionally or knowingly cause bodily injury to Greg Wilson, a public servant . . . and the defendant did use or exhibit a deadly weapon during the commission of the assault." *Id.* Because the State was not required to prove Wilson suffered serious bodily injury,

30

and the term did not appear in the indictment, we held that submission of a separate definition of serious bodily injury "would be relevant only to further explain the definition given by the trial court for the term 'deadly weapon.'" *Id.* at 547–48. We further found the briefing in *Remsburg* insufficient as it failed to "show what evidence in the record demonstrate[d] actual harm." *Id.* at 548.

Similarly, in this case the State alleged Barnett "did then and there intentionally and knowingly threaten imminent bodily injury to James Bryan by threatening to cut James Bryan and the defendant did use or exhibit a deadly weapon during the commission of the assault, to-wit: a knife." As in *Remsburg*, the State was not required to prove that Bryan suffered serious bodily injury, the term serious bodily injury did not appear in the indictment, and the trial court defined deadly weapon as one "capable of causing death or serious bodily injury." Also as in *Remsburg*, Barnett's briefing has failed to demonstrate actual harm in light of the trial court's deadly weapon definition. Therefore, we overrule this point of error.

For the reasons given, we affirm the trial court's judgment.

Josh R. Morriss, III
Chief Justice

Date Submitted:    June 8, 2011
Date Decided:    June 14, 2011

Publish