

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-13-00094-CR

_____

RONNIE MONTALBANO, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 124th District Court
Gregg County, Texas
Trial Court No. 41041B

Before Morriss, C.J., Carter and Moseley, JJ.
Memorandum Opinion by Justice Carter

## MEMORANDUM OPINION

Ronnie Montalbano was convicted by a jury of aggravated assault causing bodily injuries while using a deadly weapon. *See* TEX. PENAL CODE ANN. § 22.02(a)(2) (West 2011). Proof of a previous conviction enhanced the punishment range to a first degree felony. The jury assessed punishment at seventy-five years' imprisonment. Montalbano contends that the evidence is insufficient to support a finding that a deadly weapon was used. The indictment provided four potential objects used by Montalbano as a deadly weapon: a flashlight, a multi-tool, a power inverter (or converter) box, and/or a chain.

## I. Facts

Virginia Oxsheer testified that on Sunday morning, October 16, 2011, a bruised, scared, and beaten female appeared at her front door. Police were called and identified the person at Oxsheer's home as Haley Brook Oneil. Oneil reported that she had been beaten by Montalbano, a recurrent boyfriend. She gave several responses about the items Montalbano used to cause her injuries. Common themes running through these several responses were Montalbano, Montalbano and Oneil's use of methamphetamine together, a drive into the country, and Montalbano's attack on Oneil. Montalbano admitted assaulting her with his hands but denied using other objects.

"Just to get out of the house," Oneil went with Montalbano to take a ride in his pickup truck. Montalbano immediately began using methampethamine and then, according to Oneil, hit her with a Maglite. The two of them drove down an oil-lease road and had sex. Following that, Montalbano struck Oneil with a chain wrapped around his fist. At some point during the drive,

Montalbano told Oneil that he had been hired to kill her. Oneil testified that Montalbano hit her several more times with an inverter/converter unit. Both of them used drugs while they were together. Later, during the evening cruise, the vehicle Montalbano was driving ran out of fuel. They entered a wooded area on foot. The exact sequence of events is unclear from the record, but eventually Montalbano left Oneil in the woods, and she found her way to the home of Oxsheer.

Montalbano's recitation of the events of the evening is substantially different. He testified that Oneil called him to pick her up, that she began throwing things at him, and that he got angry, striking her several times, but only with his hands. He denied using a flashlight or any object to strike her.

Oneil's testimony was not without some contradiction or conflict. The testimony of Deputy Charles David Easterling established that when Oneil arrived at Oxsheer's home, she possessed a multi-tool, which was offered into evidence. According to Easterling, Oneil told him that she had been struck with the multi-tool object; however, at trial, Oneil testified that she did not recall being hit or threatened with it. Neither the power inverter/converter nor the flashlight were introduced as evidence. A chain was recovered from Montalbano's truck. No attempt was made to obtain scientific evidence to connect any of the items with Montalbano.

Deputy Douglas Morgan testified that Oneil's injuries were consistent with being hit with objects such as the ones alleged to have been used and not from blows from a fist or foot.

3

Montalbano argues that the failure to produce and introduce the physical objects allegedly used as weapons is critical, particularly since there is no medical testimony about Oneil's injuries or forensic evidence to connect the objects to her injuries. We disagree.

## II. Sufficiency of the Evidence

In determining whether the evidence is legally sufficient to support a deadly weapon finding, we review all the evidence in the light most favorable to the jury's verdict to determine whether any rational jury could have found the essential elements of aggravated assault with a deadly weapon beyond a reasonable doubt. *Brooks v. State*, 323 S.W.3d 893, 899, 912 (Tex. Crim. App. 2010) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). We examine legal sufficiency under the direction of the *Brooks* opinion, while giving deference to the responsibility of the jury "to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (citing *Jackson*, 443 U.S. at 318–19); *Wilson v. State*, 391 S.W.3d 131, 135 (Tex. App.—Texarkana 2012, no pet.).

Legal sufficiency of the evidence is measured by the elements of the offense as defined by a hypothetically correct jury charge. *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997); *see Grotti v. State*, 273 S.W.3d 273, 280 (Tex. Crim. App. 2008). The indictment alleges that Montalbano did "then and there intentionally, knowingly, or recklessly cause bodily injury to H. Oneil by striking or hitting H. Oneil's head or body with a flashlight, and . . . did then and there use or exhibit a deadly weapon, to-wit: a flashlight, during the commission of said

4

assault." The same language was used in three subsequent paragraphs, each specifying a different object as the weapon.

Montalbano committed the offense of aggravated assault if he intentionally, knowingly, or recklessly caused bodily injury to another and used or exhibited a deadly weapon during the assault. TEX. PENAL CODE ANN. § 22.01(a)(1) (West Supp. 2013), § 22.02(a)(2) (West 2011). A deadly weapon is anything that in the manner of its use or intended use is capable of causing death or serious bodily injury. TEX. PENAL CODE ANN. § 1.07(a)(17)(B) (West Supp. 2013); *see Barnett v. State*, 344 S.W.3d 6, 12 (Tex. App.—Texarkana 2011, pet. ref'd).

Oneil identified the items that were used by Montalbano while assaulting her. Montalbano acknowledged that he struck her with his fists, but denied using any objects as weapons. Oneil testified that the assaults caused physical pain, and such bodily injuries were further demonstrated by photographs and descriptions of her appearance shortly after the events occurred. Investigating officers testified that if each of the objects were used as she described to cause her injuries, then they could cause death or serious bodily injury. Deputy Morgan also testified that her injuries were consistent with injuries caused by objects rather than fists. The testimony is in conflict, but there is evidence to support a finding that Montalbano used the objects to assault Oneil, that they caused bodily injury, and that the objects were capable of causing serious bodily injury or death.

We affirm the judgment.


                                         Jack Carter
                                         Justice

Date Submitted:        January 10, 2014
Date Decided:          January 22, 2014

Do Not Publish