COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



HENRY EARL HAMPTON, §

                Appellant, §

v. §

THE STATE OF TEXAS, §

                Appellee. §

§

No. 08-13-00335-CR

Appeal from the

396th District Court

of Tarrant County, Texas

(TC# 1288615D)

## **O P I N I O N**

A jury convicted Appellant, Henry Earl Hampton, of aggravated assault with a deadly weapon, a glass. In his sole issue on appeal, Hampton contends the trial court erred in refusing to submit simple assault as a lesser-included offense. We conclude the trial court did not err in refusing to submit simple assault as a lesser-included offense, because there was no evidence that if Appellant was guilty, he was guilty of only simple assault. Accordingly, we affirm.[1]

## **BACKGROUND**

The relevant evidence of the assault came from the complaining witness, Dolston Bridges, and three eyewitnesses. On the night of the incident, Appellant and Bridges were among a group of friends who had casually gathered in an apartment-complex parking lot. Bridges testified that

---

[1] This case was transferred from the Second Court of Appeals in Fort Worth, and we decide it in accordance with the precedent of that court to the extent required by TEX. R. APP. P. 41.3.

shortly after midnight, he and Appellant were discussing the military, when "for no reason" Appellant pushed him over a concrete ledge, causing him to fall approximately two feet. Bridges got up. He was not bleeding. But then, Appellant pushed him again. This time Bridges grabbed Appellant, threw him onto the hood of a car, and held him there. Bridges testified he did not hit Appellant. As Bridges was holding Appellant down on the car, Bridges' friend, Ray Thornton, informed Bridges that he was bleeding. Bridges did not remember seeing a wine glass in Appellant's hands and had not noticed that Appellant had cut him. But, Bridges discovered that he was in fact bleeding. Following this incident, Bridges was hospitalized for three days and required staples for his injuries.

Ray Thornton testified that Appellant, who seemed upset with someone else, joined their conversation while he and Bridges were talking that evening. After Bridges mentioned that he used to be in the military, Appellant stated he had also been in the military, became argumentative, and started cussing. Appellant began walking away down the street, and Thornton suggested to Bridges that they leave. At one point, however, Bridges began speaking with Appellant once again. Thornton then saw Appellant push Bridges over a hedge. Because it was a "good drop" and a "nice little fall," Thornton was concerned that Appellant could have been injured, but after Thornton helped him up, he discovered Bridges was not injured. Bridges and Appellant began speaking once more, and soon Appellant and Bridges had grabbed each other, and Bridges held Appellant down on top of a car. Thornton saw Appellant's arm moving and thought he was trying to get Bridges off of him. When the men got up, however, Thornton saw that Bridges was bleeding. Thornton later saw Appellant had a glass in his hand. Bridges asked Thornton to take him to a doctor but Thornton, who was scared that Bridges would "bleed out" because of the speed

and volume of the blood loss, insisted that they first go to his apartment to stop the bleeding. Thornton was unable to stop the bleeding completely but enough so that he could safely take Bridges to the hospital.[2]

Ruetta Featherston described Bridges as calm, nice, and non-aggressive. Ruetta observed that Appellant was drinking from a glass goblet with a stem that he held in his hand. Featherston heard someone mention that Bridges had been in the military, and also heard Appellant, who was acting a little angry, say, "Bitch, you're not military." Bridges remained calm. Featherston testified that Appellant, on the other hand, was escalating the situation.

At one point, Featherston observed Bridges getting up off the ground and coming from behind a wall with an approximate four-foot drop off. Although she did not see Appellant push Bridges over the wall, Appellant was the only other person in the area. She initially saw Bridges raise his hands in a fighting stance and then lower them "like he didn't want to fight." Featherston heard Bridges attempting to resolve the issue in a non-aggravated manner. She testified that Bridges was not angry, and in fact was more calm than Featherston thought he should have been.

She then saw the men get into "a hug hold, like kind of tussling a little bit," fall on Appellant's car, and break apart. Featherston observed an angry look on Appellant's face, saw him reach his hand through the window into his car, and believing that he was reaching for a gun, screamed to alert the others. She heard glass shatter as if broken on a brick, and observed glass "going everywhere." She then saw Appellant, who was the only person holding a broken piece of glass, place Bridges in a "bear hug with the glass in his hand," and jab and stick Bridges in the back

_____

[2] There was evidence that as Bridges was crossing the parking lot to leave for the hospital, Appellant drove his car at Bridges, striking him in the torso. Appellant then backed up, and again attempted to hit Bridges, but this time Bridges avoided a collision by jumping between two parked cars.

of the neck five to ten times with the broken glass. She did not observe Bridges fighting back. She testified that Appellant cut his hand with the glass. Featherston confirmed that the glass shown to her at trial was consistent with what she had seen Appellant holding the night of the offense.

Featherston's husband, Tervories Fitzpatrick, observed that Appellant was angry, and heard some cussing about the military. Bridges, on the other hand, was calm, and was attempting to understand the situation and what he may have done. Fitzpatrick did not see Appellant push Bridges over a wall. Earlier, Fitzpatrick had seen Appellant holding and drinking from a glass similar to a wine glass, but did not see him holding the glass before the argument; nor did he see Appellant get the glass before he approached Bridges and began hitting him with roundhouse swings to the backside of his body. He realized Appellant had some unknown object in his hand after "seeing all the blood," but never saw the object after the altercation. Fitzpatrick did not observe the men on a car. But, he did observe that Bridges was bleeding from the back of his head and that Appellant was bleeding from his hand.

## DISCUSSION

### *Standard of Review*

We conduct a two-part *Aguilar/Rousseau* analysis to determine whether the trial court should have given the jury a lesser-included offense instruction. *State v. Meru,* 414 S.W.3d 159, 162 (Tex.Crim.App. 2013); *Cavazos v. State,* 382 S.W.3d 377, 382 (Tex.Crim.App. 2012); *Shannon v. State*, __S.W.3d__, No. 08-13-00320-CR, 2015 WL 6394922, at *8 (Tex.App. – El Paso Oct. 21, 2015, no pet. h.). First, we must determine as a matter of law whether the requested instruction is indeed a lesser-included offense of the offense charged. *Meru,* 414 S.W.3d at 162;

4

*Cavazos,* 382 S.W.3d at 382; *Hall v. State,* 225 S.W.3d 524, 535 (Tex.Crim.App. 2007). To do this, we compare the elements of the offense as alleged in the indictment with those of the requested lesser offense. *Meru,* 414 S.W.3d at 162. This is a question of law that is independent of the evidence produced at trial. *Rice v. State,* 333 S.W.3d 140, 144 (Tex.Crim.App. 2011); *see also Meru,* 414 S.W.3d at 162. Second, as a question of fact, we must determine there is some evidence in the record that would permit a jury to rationally find that, if the defendant is guilty, he is guilty only of the lesser offense. *See Meru,* 414 S.W.3d at 162–63 (citing *Hall,* 225 S.W.3d at 536); *Guzman v. State,* 188 S.W.3d 185, 188–89 (Tex.Crim.App. 2006).

"[A]nything more than a scintilla of evidence may be sufficient to entitle a defendant to a charge on a lesser offense." *Cavazos,* 382 S.W.3d at 385; *see also Meru,* 414 S.W.3d at 163. Further, in determining whether the evidence presented at trial supported an instruction on a lesser-included offense, a reviewing court may not consider whether the evidence presented was "credible, controverted, or in conflict with other evidence." *Moore v. State,* 969 S.W.2d 4, 8 (Tex.Crim.App. 1998); *Shannon*, 2015 WL 6394922, at *8.

Nevertheless, the evidence supporting an instruction on a lesser-included offense "must still be directly germane to the lesser-included offense[.]" *Cavazos,* 382 S.W.3d at 385; *see also Hampton v. State,* 109 S.W.3d 437, 441 (Tex.Crim.App. 2003) (evidence must be "directly germane" to lesser-included offense before an instruction on a lesser-included offense is warranted). Further, this "threshold requires more than mere speculation – it requires affirmative evidence that both raises the lesser-included offense and rebuts or negates an element of the greater offense." *Cavazos,* 382 S.W.3d at 385; *see also Shannon*, 2015 WL 6394922, at *8.

*Analysis*

5

The first step of our analysis is simple. The parties agree that Appellant's requested instruction for misdemeanor "assault by bodily injury" is, as a matter of law, a lesser-included offense of the charged offense of aggravated assault. The State charged Appellant with aggravated assault by intentionally or knowingly committing the simple assault of causing bodily injury to Bridges by cutting him with a glass, which was aggravated by Appellant's use or exhibition of a deadly weapon – the glass – in the commission of that simple assault.[3] Appellant requested the jury be charged on "the lesser-included offense of assault by bodily injury, class-A misdemeanor."[4] Thus, the indicted offense of aggravated assault and the requested offense of simple assault share the same elements, with the only difference being that aggravated assault includes the additional "aggravating" element of the use or exhibition of a deadly weapon. "An offense is a lesser included offense if … it is established by proof of the same or less than all the facts required to establish the commission of the offense charged[.]" TEX. CODE CRIM. PROC. ANN. art. 37.09(1) (West 2006); *Meru,* 414 S.W.3d at 162 ("An offense is a lesser-included offense of another offense, under Article 37.09(1) of the Code of Criminal Procedure, if the indictment for the greater-inclusive offense … alleges all of the elements of the lesser-included offense[.]") (quoting *Ex parte Watson*, 306 S.W.3d 259, 273 (Tex.Crim.App. 2009) (op. on reh'g)).

Because the first part of the test is satisfied, the trial court was required to submit

---

[3] A person can commit the offense of simple assault by intentionally or knowingly causing bodily injury to another person. TEX. PENAL CODE ANN. § 22.01(a)(1)(West Supp. 2015). A person can commit aggravated assault if he commits simple assault as defined in § 22.01 and uses or exhibits a deadly weapon during the commission of the simple assault. TEX. PENAL CODE ANN. § 22.02(a)(2) (West 2011).

[4] The offense of simple assault by intentionally or knowingly causing bodily injury to another person is a Class A misdemeanor. TEX. PENAL CODE ANN. § 22.01(b) (West Supp. 2015) ("An offense under Subsection (a)(1) is a Class A misdemeanor[.]").

Appellant's requested lesser-included offense instruction if the evidence at trial could permit a rational jury to find Appellant guilty of only the lesser offense of simple assault. *Meru,* 414 S.W.3d at 161. The Court of Criminal Appeals has identified two ways in which evidence may indicate that a defendant is guilty of only the lesser offense. *Cavazos*, 382 S.W.3d at 385. First, evidence may have been raised that refutes or negates other evidence establishing the greater offense. *Id.* Second, the evidence presented regarding the defendant's awareness of the risk may be subject to two different interpretations, in which case the jury should be instructed on both inferences. *Id.* Anything more than a scintilla of evidence may be sufficient to entitle a defendant to a lesser charge. *Hall*, 225 S.W.3d at 536. That evidence, however, must establish the lesser-included offense as a valid, rational alternative to the charged offense. *Id.*

We begin our analysis by noting that there was direct evidence in the record that Appellant intentionally used the glass in a manner that was capable of causing death or serious bodily harm. Ruetta Featherston testified that she saw Appellant, who was the only person holding a broken piece of glass, place Bridges in a "bear hug with the glass in his hand," and jab and stick Bridges in the back of the neck five to ten times with the broken glass.

Appellant first argues that there was some evidence that he was not even holding a glass during his altercation with Bridges, relying on Thornton's testimony that he did not see Appellant holding a glass until after the attack, and on Fitzpatrick's testimony that he did not see Appellant holding anything but did see Appellant bleeding from his hand. This evidence is insufficient to support submission because a witness's failure to see something is not "affirmative evidence" negating an element of the greater offense. *See Barnett v. State*, 344 S.W.3d 6, 16 (Tex.App. – Texarkana 2011, pet. ref'd) (witnesses' failure to perceive knife does not negate allegation of use

7

of a deadly weapon).  The threshold for submission "requires more than mere speculation – it requires affirmative evidence that both raises the lesser-included offense and rebuts or negates an element of the greater offense."   *Cavazos,* 382 S.W.3d at 385; *Shannon*, 2015 WL 6394922, at *8. In fact, the testimony that Appellant was observed holding a glass after the attack and was bleeding from his hand is some evidence from which a jury could infer that Appellant possessed the glass during the attack.

Appellant argues that there is some evidence that Bridges' injuries were accidental in that Appellant was holding a glass simply by happenstance, rather than using or exhibiting it.  In support of his assertion, Appellant relies in part on Bridges' testimony that he did not notice that he had been hit with anything.  But, this testimony, like the testimony above, was not affirmative evidence.  Only by mere speculation could one infer from this evidence that Appellant was only accidently holding a glass.  Appellant also directs us to:  (1) Thornton's statements that he saw Appellant push Bridges over a concrete wall and observed Bridges restraining or holding Appellant; (2) Featherston's statement that she observed Bridges raise his hands in a fighting stance and saw the men fall on the car; and (3) Fitzpatrick's statements that he saw Bridges and Appellant hitting each other.  But, this is merely evidence that Appellant and Bridges were engaged in an altercation.  It is hard to see how this evidence is relevant to why Appellant was holding the glass in his hand, or to Appellant's state of mind when he used the glass.  In sum, this evidence did not support the submission of a lesser-included offense of simple assault because it was not "directly germane to the lesser-included offense[.]"   *Cavazos,* 382 S.W.3d at 385.

We agree with the State that under the evidence presented, if the jury found any assault occurred at all, it was an aggravated assault.   None of the evidence relied on by Appellant negates

8

or refutes the allegation and evidence that Appellant used the glass as a deadly weapon during the assault. *Id*. Nor does Appellant assert, and we do not conclude, that the evidence presented was germane to whether defendant's awareness of the risk may be subject to two different interpretations. *Id.*

We conclude there is no evidence in the record that if Appellant is guilty, he is guilty only of the offense of simple assault by causing bodily injury. We conclude the evidence was insufficient to permit a rational jury to find that Appellant was guilty only of simple assault, rather than aggravated assault with a deadly weapon. The evidence fails to establish the lesser-included offense of simple assault as a valid, rational alternative to the aggravated assault with a deadly weapon as charged. *Meru,* 414 S.W.3d at 161; *Hall*, 225 S.W.3d at 536. Because the second part of the test is not satisfied, the trial court did not err in denying Appellant's request to include simple assault as a lesser-included offense in the jury charge. Appellant's sole issue on appeal is overruled.

## CONCLUSION

The trial court's judgment is affirmed.

STEVEN L. HUGHES, Justice

November 30, 2015

Before McClure, C.J., Rodriguez, and Hughes, JJ.

(Do Not Publish)

9