**Opinion issued August 21, 2025**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-24-00756-CV

————————————

**MET INTERNATIONAL TRADING CO., INC. AND LEAVEIL SKINNER,**
**Appellants**

**V.**

**49NORTH LLC AND BRANDON PASSE, Appellees**

---

**On Appeal from the County Civil Court at Law No. 2**
**Harris County, Texas**
**Trial Court Case No. 1206870**

---

## MEMORANDUM OPINION

Appellees Brandon Passe and 49North LLC filed suit against Appellant Met International Trading Company, Inc. and its chief executive officer and owner, Appellant Leaveil Skinner, in connection with the purchase of a container home.

Appellees asserted claims for breach of contract, deceptive trade practices, fraud, and other torts.

In one issue, Met and Skinner argue the trial court abused its discretion in denying their motion to stay the litigation and compel arbitration.

We affirm.

## Background

Met International Trading Company, Inc. contracted with Brandon Passe[1] and 49North LLC for the construction of a metal container home. The contract was signed "on behalf of Brandon Passe & 49North LLC by Brandon Passe, Owner," and "on behalf of Met International Trading Company Inc. by Leaveil Skinner, CEO." Skinner is not a party to the contract. Pursuant to the contract, Met was to build a metal container home[2] in Texas and deliver the completed home to 49North's site in Sumas, Washington by May 1, 2023. The purchase price for the home, including delivery, was $214,650, and Passe and 49North made a down payment of $128,790. The contract contains an arbitration clause that states:

> Any controversies or disputes arising out of or relating to this Contract shall be resolved by binding arbitration in accordance with the then-current Commercial Arbitration Rules of the American Arbitration Association.
>
> . . .

---

[1]     Passe is the managing member of 49North LLC.

[2]     The contract was for a "structure made from shipping containers."

2

> All documents, materials, and information in the possession of each party that are in any way relevant to the dispute shall be made available to the other party for review and copying no later than 30 days after the notice of arbitration is served.

Met did not deliver the container home by the stated deadline and it refused to refund to Passe and 49North their down payment and an additional advanced payment of $3,674.45. According to Passe and North49, after missing the May deadline, "Skinner threatened to sue Mr. Passe" stating "we will let arbitration decide." Passe and North49 responded by filing the present action. In the lawsuit, Passe and 49North argued that Met breached the contract, and that Met and Skinner committed fraud, fraudulent inducement, violations of the Texas Deceptive Trade Practices—Consumer Protection Act,[3] and conspiracy and aiding and abetting. North49 and Passe filed their original suit against Met on June 26, 2023, and they added Skinner as a party on November 9, 2023.

Met and Skinner filed an answer that comprised a general denial and affirmative defenses, Skinner's verified pleas asserting he could not be sued in his individual capacity, and Met's counterclaims for breach of contract, quantum meruit, trade secret appropriation, breach of fiduciary duty, and civil conspiracy. Met sought the recovery of damages and attorneys' fees, and it demanded a jury

---

[3] *See* TEX. BUS. & COM. CODE §§ 17.41–.63.

trial.[4] Met and Skinner also added Dario Gerussi as a third-party defendant.[5] Met and Skinner argued that 49North, Passe, and Gerussi were jointly and severally liable for their conspiratorial actions against Met and Skinner, that 49North and Passe were jointly and severally liable for the claims of breach of contract and quantum meruit, that 49North was an alter ego of Passe, and that the corporate veil should be pierced to hold Passe liable for 49North's actions.

On April 2, 2024, Met's and Skinner's attorney filed a motion to withdraw, which the trial court granted on July 10, 2024. Met and Skinner remained unrepresented until September 10, 2024, when their current counsel first appeared in the litigation.

Meanwhile, on August 12, 2024, the trial court granted 49North's and Passe's no evidence motion for summary judgment dismissing with prejudice Met's counterclaims[6] and Met's and Skinner's affirmative defenses. On September 9, 2024, the trial court also granted summary judgment in favor of 49North and Passe on their breach of contract claim against Met, and it awarded

---

[4] Met made its jury demand before Skinner was added to the lawsuit but Skinner joined in the jury demand after he was added.

[5] Gerussi is not a party to this appeal.

[6] The order states it grants summary judgment on all of Skinner's counterclaims also, but Skinner did not assert any individual counterclaims against North49 or Passe.

them $213,092.45 in contract damages. Only 49North's and Passe's tort claims against Met and Skinner remained.

## Motion to Compel Arbitration

On September 19, 2024—one month after the trial court dismissed Met's counterclaims and awarded damages to North49 and Passe on their breach of contract claim—Met and Skinner commenced arbitration proceedings against 49North and Passe asserting a breach of contract claim based on the same contract involved in the pending litigation.[7, 8] A few days later, on September 23, 2024, Met and Skinner filed in the trial court a motion to compel arbitration and stay the underlying proceedings ("Motion to Compel"). Met and Skinner argued that the arbitration agreement in the contract was "valid, irrevocable, and enforceable" under the Federal Arbitration Act ("FAA")[9] and Texas Arbitration Act ("TAA").[10] They argued the arbitration clause was governed by the FAA because the contract involves interstate commerce. Attached to the Motion to Compel was correspondence to 49North's and Passe's counsel requesting a stay pending the arbitration, a receipt for the AAA arbitration filing, the AAA Demand for

---

[7] They also asserted claims for quantum meruit, tortious interference with contract, computer fraud and abuse, misappropriate of trade secrets, and civil conspiracy.

[8] Met and Skinner also pursued arbitration against Oracle Contracting Services, Inc., a party not named in the trial court proceedings and not involved in this appeal.

[9] *See* 9 U.S.C. § 1, *et seq.*

[10] *See* TEX. CIV. PRAC. & REM. CODE § 171.001, *et seq.*

5

Arbitration,[11] the arbitration claims against 49North and Passe, the contract, the employment contracts of two former Met employees,[12] and 49North's and Passe's third amended deposition notice for Met's corporate representative filed in the litigation.

49North and Passe opposed the Motion to Compel, arguing Met and Skinner had waived their right to arbitrate and were seeking belatedly to arbitrate most of the claims that had already been decided adversely to them by summary judgment. 49North and Passe argued Met and Skinner had substantially invoked the judicial process because:

> For **453 days** [Met and Skinner] chose to extensively and almost completely litigate this case instead of arbitrating it; the defendants filed counterclaims, affirmative defenses, demanded a jury trial, added a party, filed third-party claims, served initial disclosures, expert witness designations, interrogatories, and requests for production, they appeared at many court hearings, they filed motions to compel discovery, filed motions for protection, filed motions for continuances, filed a motion in limine, filed a trial exhibit list, filed trial exhibits, filed a trial witness list, filed a jury charge; they answered interrogatories, objected to interrogatories, objected to requests for production, and produced about 600 pages of documents while also requiring the plaintiffs to produce more than 2,000 pages of documents and answer interrogatories and requests for production; they participated in a court ordered mediation, they violated 3 Court Orders and are arguably currently in violation of a fourth Court Order; all of the defendants' claims and affirmative defenses have already been dismissed by summary judgment, and plaintiffs have been

---

[11]  Although the Demand for Arbitration identifies both Met and Skinner as claimants, Met appears to be the only party seeking relief in the arbitration.

[12]  The employment contracts are not relevant to our analysis.

granted summary judgment for $213,092.45 against MET. This case is a Rule 169 Expedited Action that has already been set for trial 3 times, and its [sic] is now set for trial on Nov. 18, 2024 (**in 47 days**).

(Emphasis in original.) 49North and Passe argued that of the eleven factors courts consider to determine whether a party substantially invoked the judicial process, thereby waiving the right to arbitration, ten factors indicated Met and Skinner waived any right to arbitration.[13] With respect to Skinner, 49North and Passe additionally argued that he could not compel arbitration because he was not a signatory to the contract. 49North and Passe attached to their opposition the declarations of Passe and Fred Dietrich[14] and forty-one exhibits that included discovery propounded by Met and motions filed by Met and Skinner in the trial court prior to seeking arbitration.

In their reply, Skinner did not respond to North49's and Passe's argument that as a non-signatory to the contract, he could not compel arbitration. Met and Skinner focused instead on waiver, arguing that only one case[15] "has survived the Supreme Court of Texas on waiver," and that case is distinguishable. Met and Skinner argued that 49North's and Passe's summary judgments—granted while

---

[13]     *See Perry Homes v. Cull*, 258 S.W.3d 580, 590–92 (Tex. 2008). The *Perry Homes* factors are discussed below.

[14]     Dietrich is counsel for 49North and Passe.

[15]     *See Perry Homes*, 258 S.W.3d at 596–97 (holding homeowners substantially invoked judicial process, prejudicing defendants, and thus waiving their right to arbitration).

Met and Skinner were unrepresented—"will be challenged" and that 49North and Passe "greatly exaggerate[d] how far along this litigation [was] toward a valid judgment." Met and Skinner argued that none of the document production that occurred prior to the Motion to Compel would go to waste because the arbitration agreement required the production to the other party of "[a]ll documents, materials, and information in the possession of each party that are in any way relevant to the dispute[.]"

Met and Skinner objected to the statements of Passe and Dietrich as hearsay or in the alternative, they argued the unsworn declarations violated Section 132.001 of the Texas Civil Practice and Remedies Code.[16] Met and Skinner attached Skinner's declaration to their reply.

The trial court conducted a hearing on the Motion to Compel. Met and Skinner argued during the hearing that the document production that had occurred thus far would have been required in arbitration, thus no effort or money had been wasted toward that end. They also argued that the summary judgments the trial court had granted were not rulings on the merits, but rather had resulted from their failure to respond—when Met and Skinner were unrepresented—or based on a discovery dispute.

---

[16] Section 132.001 of the Civil Practice and Remedies Code provides the requirements for unsworn declarations. TEX. CIV. PRAC. & REM. CODE § 132.001. Although not explicitly stated, it appears Met and Skinner are complaining about the absence of a jurat. *Id.* § 132.001(d).

49North and Passe objected during the hearing to Skinner's affidavit and to Met's and Skinner's reply as untimely. As to Skinner, they argued that as a non-signatory to the contract, he could not compel arbitration of the claims asserted against him.[17] They further argued that their exhibits attached to their response to the Motion to Compel reflected the "substantial litigation that [Met and Skinner had] engaged in and the prejudice" to 49North and Passe. They argued they would be prejudiced if the case were arbitrated because they had spent more than $178,000 in attorneys' fees and more than $10,000 in litigation-related expenses preparing the case for trial. They further argued that Met and Skinner had not moved to compel arbitration until after the trial court granted two summary judgments in favor of 49North and Passe, awarding them damages of more than $213,000. They emphasized that Met and Skinner had waited to compel arbitration until the eve of trial, and further that they had not filed the Motion to Compel until 453 days after the lawsuit was filed, even though they knew about the arbitration clause well before the suit was filed.

The trial court denied Met's and Skinner's Motion to Compel. This appeal ensued.[18]

---

[17] Met and Skinner argued during the hearing that because Skinner was sued for breach of the contract containing the arbitration clause, he could invoke the arbitration clause.

[18] The FAA entitles a party to immediately appeal a trial court's order denying a motion to compel arbitration. 9 U.S.C. § 16(a)(1)(C); *see also* TEX. CIV. PRAC. &

**Standard of Review and Applicable Law**

A party seeking to compel arbitration must establish that (1) a valid arbitration agreement exists and (2) the claims fall within the scope of the agreement. *Bonsmara Nat. Beef Co., LLC v. Hart of Tex. Cattle Feeders, LLC*, 603 S.W.3d 385, 397 (Tex. 2020); *Venture Cotton Coop. v. Freeman*, 435 S.W.3d 222, 227 (Tex. 2014). If the party seeking arbitration satisfies its initial burden, the burden then shifts to the party resisting arbitration to present evidence supporting a defense to the enforcement of the arbitration provision. *Henry v. Cash Biz, LP*, 551 S.W.3d 111, 115 (Tex. 2018). Once the burden shifts to the nonmovant, a presumption exists in favor of arbitration. *Ellis v. Schlimmer*, 337 S.W.3d 860, 862 (Tex. 2011); *Garcia v. Huerta*, 340 S.W.3d 864, 869 (Tex. App.—San Antonio 2011, pet. denied). Absent a valid defense to arbitration, "the trial court has no discretion but to compel arbitration and stay its proceedings once the existence and application of the [arbitration] agreement has been shown." *Northpointe LTC, Ltd. v. Durant*, No. 01-22-00215-CV, 2022 WL 17835223, at *3 (Tex. App.—Houston [1st Dist.] Dec. 22, 2022, no pet.) (mem. op.) (quoting *In re Autotainment Partners, Ltd. P'ship*, 183 S.W.3d 532, 534 (Tex. App.—Houston

REM. CODE § 51.016 ("In a matter subject to the [FAA], a person may take an appeal . . . to the court of appeals from the judgment or interlocutory order of a district court, county court at law, or county court under the same circumstances that an appeal from a federal district court's order or decision would be permitted by 9 U.S.C. Section 16.").

10

[14th Dist.] 2006, no pet.)).  Waiver by litigation conduct is an affirmative defense to enforcement of an arbitration provision.  *Henry*, 551 S.W.3d at 115; *G.T. Leach Builders, LLC v. Sapphire V.P., LP*, 458 S.W.3d 502, 520 (Tex. 2015).

We review a trial court's order denying a motion to compel arbitration for abuse of discretion.  *Henry*, 551 S.W.3d at 115 (citing *In re Labatt Food Serv., L.P.*, 279 S.W.3d 640, 642–43 (Tex. 2009)).  A trial court abuses its discretion if it acts in an arbitrary or unreasonable manner or without reference to any guiding rules or principles.  *In re Nitla S.A. de C.V.*, 92 S.W.3d 419, 422 (Tex. 2002); *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985). "We defer to the trial court's factual determinations if they are supported by evidence but review its legal determinations de novo."  *Henry*, 551 S.W.3d at 115. Whether an arbitration agreement is enforceable and whether a party waived its right to arbitration are questions of law that we review de novo.  *Id.*  Where, as here, there is no express agreement to arbitrate under the FAA but the contract at issue involves interstate commerce, the FAA applies.[19, 20]  *See Rapid Settlements, Ltd. v. Green*, 294 S.W.3d 701, 705 (Tex. App.—Houston [1st Dist.] 2009, no pet.)

---

[19]  Interstate commerce may be demonstrated in several ways, including transportation of materials across state lines and manufacture of parts in a different state.  *See Rapid Settlements, Ltd. v. Green*, 294 S.W.3d 701, 705 (Tex. App.—Houston [1st Dist.] 2009, no pet.) (citing *Jack B. Anglin Co., Inc. v. Tipps*, 842 S.W.2d 266, 270 (Tex. 1992) (orig. proceeding)).

[20]  Both parties agree the FAA applies but 49North and Passe also contend the TAA applies.

11

("The FAA applies to all suits in state or federal court when the dispute concerns a 'contract evidencing a transaction involving commerce.'") (quoting *Jack B. Anglin Co., Inc. v. Tipps*, 842 S.W.2d 266, 269–70 (Tex. 1992) (orig. proceeding)); *Henry*, 551 S.W.3d at 115 ("The Federal Arbitration Act (FAA) generally governs arbitration provisions in contracts involving interstate commerce.").[21]

## Met's Motion to Compel

The parties do not dispute that there is a valid arbitration between Met and North49 and Passe or that the claims in the litigation fall within the scope of the arbitration clause. The only issue before us, as it pertains to Met, is whether North49 and Passe established Met waived its right to arbitration by substantially invoking the judicial process. We conclude they did.

### A. Substantial Invocation of Judicial Process

In their appellate brief, Met and Skinner do not address 49North's and Passe's argument below that Met waived its right to arbitration. They appear to focus only on Skinner's objection to waiver, stating that although Met and Skinner dispute the allegation by 49North and Passe "that Met waived its right to arbitration by engaging in litigation," addressing Met's litigation conduct "is

---

[21] Under the FAA, state law governs the question whether a litigant agreed to arbitrate, and federal law governs the scope of the arbitration clause. *In re Labatt Food Serv., L.P.*, 279 S.W.3d 640, 643 (Tex. 2009) (orig. proceeding).

12

unnecessary" because Skinner did "not meaningfully participate[] in the litigation and [thus] his right to arbitration remains firm."

We disagree with Met and Skinner that it was not necessary to address Met's litigation conduct on appeal. When a trial court does not issue findings of fact or conclusions of law to explain its reasons for denying a motion to compel arbitration, we must "uphold the trial court's decision on any appropriate legal theory urged below." *F.T. James Constr., Inc. v. Hotel Sancho Panza, LLC*, 657 S.W.3d 623, 629 (Tex. App.—El Paso 2022, no pet.). North49 and Passe defended against the Motion to Compel not only with respect to Skinner, but also with respect to Met, arguing Met had substantially invoked the judicial process thus waiving its right to arbitration. Because Met has not addressed the argument 49North and Passe made in the trial court—that Met waived its right to arbitration—we must uphold the trial court's ruling denying the Motion to Compel as it pertains to Met. *See id.*; *see also Treviño v. City of San Antonio*, 685 S.W.3d 863, 867–68 (Tex. App.—San Antonio 2023, no pet.) (observing when appellant fails to challenge "each individual ground to merit reversal," he fails to preserve error and appellate court "has no choice but to affirm the adverse ruling.").

Even if we considered waiver as to Met, we would conclude Met waived its right to arbitration by substantially invoking the judicial process. The determination of whether a party has substantially invoked the judicial process

13

"depends on the totality of the circumstances." *G.T. Leach Builders*, 458 S.W.3d at 512 (citing *Perry Homes v. Cull*, 258 S.W.3d 580, 589–90 (Tex. 2008)). The "wide variety" of factors courts consider in determining whether the judicial process has been "substantially invoked" include:

> (1) the movant's delay in moving to compel arbitration; (2) the reasons for the movant's delay; (3) whether and when the movant learned of the arbitration agreement; (4) how much discovery the movant conducted before moving to compel arbitration, and whether that discovery related to the merits; (5) whether the movant requested disposition of any claims on the merits; (6) whether the movant asserted affirmative claims for relief in court; (7) the extent of the movant's engagement in pretrial matters related to the merits (as opposed to matters related to arbitrability or jurisdiction); (8) the amount of time and expense the parties committed to the litigation; (9) whether the discovery conducted would be unavailable or useful in arbitration; (10) whether activity in court would be duplicated in arbitration; and (11) when the case is set to be tried.

*G.T. Leach Builders*, 458 S.W.3d at 512 (citing *Perry Homes*, 258 S.W.3d at 590–91). No particular factor is dispositive. *RSL Funding, LLC v. Pippins*, 499 S.W.3d 423, 430 (Tex. 2016). Nor must all or most of these factors be present to support waiver. *Perry Homes*, 258 S.W.3d at 591. Rather, "[c]ourts look to the specifics of each case." *Courtright v. Allied Custom Homes, Inc.*, 647 S.W.3d 504, 516 (Tex. App.—Houston [1st Dist.] 2022, pet. denied) (citing *Henry*, 551 S.W.3d at 116).

"Due to the strong presumption against waiver of arbitration, [the] hurdle [to establish waiver] is a high one." *Perry Homes*, 258 S.W.3d at 590. "Merely

14

taking part in litigation" is insufficient to constitute waiver by litigation conduct. *G.T. Leach Builders*, 458 S.W.3d at 512 (quoting *In re D. Wilson Constr. Co.*, 196 S.W.3d 774, 783 (Tex. 2006) (orig. proceeding)). In addition, "delay alone generally does not establish waiver." *In re Vesta Ins. Grp., Inc.*, 192 S.W.3d 759, 763 (Tex. 2006) (orig. proceeding). But "a party cannot substantially invoke the litigation process and then switch to arbitration on the eve of trial." *Perry Homes*, 258 S.W.3d at 584.

Although we are not required to craft an argument for Met,[22] we briefly address the applicable *Perry Homes* factors, which we separate into four broad categories.

### 1. Delay

Met did not file its Motion to Compel until 453 days[23]—approximately fifteen months—after 49North and Passe filed suit and only after three trial settings were continued, some at the instance of Met's motions for continuance. Courts have found waiver when the delay was comparable or even shorter. *See, e.g., Perry Homes*, 258 S.W.3d at 596 (finding waiver where party delayed request for arbitration fourteen months after filing suit); *Adams v. StaxxRing, Inc.*, 344 S.W.3d

---

[22] *See Bhatia v. Woodlands N. Houston Heart Ctr., PLLC*, 396 S.W.3d 658, 666 n. 9 (Tex. App.— Houston [14th Dist.] 2013, pet. denied) (declining to "make [appellant's] argument for him").

[23] The lawsuit was filed on June 26, 2023. Met and Skinner filed their Motion to Compel on September 21, 2024.

641, 649 (Tex. App.—Dallas 2011, pet. denied) (finding party's thirteen-month delay before invoking arbitration supported finding waiver); *In re Christus Spohn Health Sys. Corp.*, 231 S.W.3d 475, 480–81 (Tex. App.—Corpus Christi–Edinburg 2007, orig. proceeding) (finding waiver after fourteen months of litigation and resetting matter for trial three times); *Menger v. Menger*, No. 01-19-00921-CV, 2021 WL 2654137, at *5 (Tex. App.—Houston [1st Dist.] June 29, 2021, no pet.) (mem. op.) (finding party's six-month delay before requesting arbitration supported finding of waiver when party "knew about the arbitration clause long before he filed his motion to compel arbitration").

Met unequivocally knew about the arbitration clause before North49 and Passe filed suit because just one month before North49 and Passe filed suit, Skinner wrote an email to Passe stating that if his proposed resolution was not satisfactory, they would "let [a]rbitration decide" or they could "take it to [a]rbitration and court if necessary until a solution." Further, according to Passe, Met "wrote the [m]anufacturing contract [and] inserted the arbitration clause into the contract." These factors bode in favor of waiver and against compelling the case to arbitration. *See Prof'l Advantage Software Sols., Inc. v. W. Gulf Mar. Ass'n Inc.*, No. 01-15-01006-CV, 2016 WL 2586690, at *4 (Tex. App.—Houston

16

[1st Dist.] May 5, 2016, no pet.) (mem. op.) ("[W]e [] presume that a party knows the contents of an agreement that it drafts and seeks to enforce.").[24]

Met does not offer a compelling explanation for its delay in moving to compel arbitration. *See Pounds v. Rohe*, 592 S.W.3d 549, 555 (Tex. App.— Houston [1st Dist.] 2019, no pet.) (considering among factors weighing in favor of waiver fact that delay was substantial, knowing, and unexplained, and stating record did not "suggest a sympathetic reason for [defendants'] decision to wait so long to seek arbitration"). Met and Skinner argue they were unrepresented from July 10, 2024 through September 10, 2024, but they do not explain why, during the approximate one year that preceded that date (during which they were represented by counsel), they did nothing to compel arbitration. Given that Met drafted the contract and knew about the arbitration clause, and because Met did not file its Motion to Compel for almost fifteen months after suit was filed and only after the trial court granted summary judgment against Met awarding damages to North49 and Passe on their breach of contract claim, we are not persuaded by the fact Met did not have counsel for two months during the litigation.[25]

---

[24]     Met does not dispute that it drafted the contract.

[25]     Nor are we persuaded by Met's argument that the Texas Supreme Court issued an order delaying some deadlines in justice court because of Hurricane Beryl, which struck on July 8, 2024. That order did not appear to apply to county courts and even if it did, it does not explain Met's delay in seeking arbitration.

On this record, we find Met's delay in moving to compel arbitration supports a finding of waiver.

## 2. Discovery and Trial Settings

Before moving to compel arbitration, Met propounded two sets of merits-based discovery each on 49North and Passe, resulting in the production of more than 2,000 pages of documents.[26, 27] Met also responded to merits-based discovery, producing more than 600 pages of documents. Indeed, Met did not file its Motion to Compel until after discovery closed and after filing motions to continue the then-existing September 2024 trial setting, which the trial court granted, resetting the trial to November 18, 2024.[28] Within a few days after

---

[26] At some point, Met also filed a motion to compel discovery and set the motion for hearing, although it ultimately passed the hearing when North49 and Passe provided the requested information.

[27] *Compare with In re Fleetwood Homes of Tex., L.P.*, 257 S.W.3d 692, 694–95 (Tex. 2008) (holding party failed to overcome presumption against waiver where, among other things, it took no depositions, although it noticed one deposition before cancelling it, and it served one set of written discovery the day before moving to compel arbitration); *In re Bruce Terminix Co.*, 988 S.W.2d 702, 704 (Tex. 1998) (concluding party did not waive right to arbitration by propounding one set of eighteen interrogatories and one set of nineteen requests for production).

[28] The case was initially set for trial on February 19, 2024. The trial was reset for May 20, 2024, later for September 11, 2024, and last for November 18, 2024—these last two re-settings at the request of Met and Skinner.

securing this new trial setting, Met and Skinner filed an arbitration proceeding, and four days later they filed their Motion to Compel arbitration in the trial court.[29]

Previously, in May 2024, Met and Skinner had filed a motion for continuance and an amended motion for continuance of the then May 2024 trial setting stating they needed a continuance to "obtain additional discovery," including depositions, claiming the discovery was "material to the causes of action." They also stated they needed additional time because Met had "added another party" to the litigation and it would be "filing additional petitions and answers." Met and Skinner set their motion for continuance for hearing, and they participated at the hearing securing a continuance of the trial setting to September 2024. The parties previously had been required to file trial exhibit lists, trial exhibits, witness lists, motions in limine, and their proposed jury charges by May 15, 2024, and the parties complied. These factors weigh in favor of a finding of waiver. *See Perry Homes*, 258 S.W.3d at 596 ("[T]he record is nevertheless clear that most of the discovery in the case had already been completed before the Culls requested arbitration. The rule that one cannot wait until 'the eve of trial' to request arbitration is not limited to the evening before trial; it is a rule of proportion that is implicated here."); *Garg v. Pham*, 485 S.W.3d 91, 107 (Tex. App.—Houston [14th

---

[29] According to 49North and Passe, when the Motion to Compel was filed, discovery had ended "except for the court-ordered deposition of Met's corporate representative."

Dist.] 2015, no pet.) ("A party can substantially invoke the judicial process when it participates in full discovery, files motions going to the merits, and waits until the eve of trial to seek arbitration."); *In re Fleetwood Homes of Tex., L.P.*, 257 S.W.3d 692, 694–95 (Tex. 2008) (holding contractual arbitration rights are waived by parties that "conduct full discovery, file motions going to the merits, and seek arbitration only on the eve of trial") (quoting *In re Vesta Ins. Grp.*, 192 S.W.3d at 764).

We note that the arbitration clause requires that each party make available to the other "[a]ll documents, materials, and information in the possession of each party that are in any way relevant to the dispute[.]" However, the usefulness of discovery in arbitration "is but a factor to be considered." *Adams*, 344 S.W.3d at 649.

### 3. Affirmative Relief and Pretrial Matters

Met asserted counterclaims against 49North and Passe, and it also joined a third party against whom it asserted affirmative claims. Further, before seeking arbitration, Met filed a motion to compel production, served two expert designations, filed motions for protection, filed motions for trial continuances to obtain additional discovery, and filed a motion in limine, a trial exhibit list, trial exhibits, a trial witness list, and a jury charge. According to counsel for Passe and

49North, they have incurred more than $10,000[30] in litigation expenses and more than $178,000 in attorneys' fees.[31]

In August 2024, the trial court granted summary judgment in favor of North49 and Passe dismissing all of Met's counterclaims and all of Skinner's and Met's affirmative defenses. Later, in September 2024, the trial court granted summary judgment in favor of North49 and Passe on their breach of contract claim against Met and awarded North49 and Passe $213,092.45 in damages. The trial court's disposition of the contract claim, Met's counterclaims, and its affirmative defenses would be duplicated in arbitration. Indeed, by proceeding in arbitration and asserting claims based on the same contractual dispute, Met would have the opportunity to relitigate matters that have already been adversely decided against it in trial court. These factors suggest that Met substantially invoked the judicial process thus waiving its right to arbitration. *See Courtright*, 647 S.W.3d at 522 (holding party waived arbitration when, among other things, it sought to compel arbitration after court entered summary judgment against it).

---

[30]    In their response to the Motion to Compel, 49North and Passe's argued they had incurred more than $8,600 in litigation costs, but that sum apparently had risen to more than $10,000 by the time of the hearing on the Motion to Compel.

[31]    There is no indication in Met's brief or its pleadings how much money Met has spent or the amount of expenses incurred in litigation thus far.

#### 4. Trial Settings and Adverse Rulings

The Motion to Compel was filed fifty-six days before the November 2024 trial setting and after the trial court had issued two summary judgment ruling in favor of 49North and Passe. The prior May 2024 trial setting was continued at Met's request so that it could obtain additional discovery from the third party it added to the litigation, and the subsequent September 2024 trial setting was also reset pursuant to Met's motion for continuance, which it filed thirteen days before it filed its Motion to Compel. This factor also weighs in favor of a finding of waiver.

Given Met's extensive participation in pretrial matters related to the merits of its claims, we conclude Met substantially invoked the judicial process. *See id.* (holding party substantially invoked judicial process when it knew about arbitration provision "from the outset," and "engag[ed] in significant discovery and motion practice for almost two years before seeking to compel arbitration"). We are also swayed by Met's failure to seek arbitration until after the granting of two summary judgments in favor of 49North and Passe, one of which required Met to pay more than $213,000 in damages for North49 and Passe's breach of contract claim, which claim Met now seeks to re-litigate in arbitration. *See id.* (holding party substantially invoked judicial process and waived arbitration when, among other things, it sought arbitration after trial court entered summary judgment

22

against party "with a fast-approaching trial setting"); *see also BBX Operating, LLC v. American Fluorite, Inc.*, No. 09-17-00245-CV, 2018 WL 651276, at *6 (Tex. App.—Beaumont Nov. 16, 2017, no pet.) (mem. op.) ("[A] party who is aware of an arbitration clause, yet only files a motion to compel arbitration after having engaged in discovery and filed pleadings with the trial court, and after having received an adverse ruling from a trial court, has substantially invoked the litigation process and thereby waived its right to arbitrate"); *Hogg v. Lynch, Chappell & Alsup, P.C.*, 480 S.W.3d 767, 790 (Tex. App.—El Paso 2015, no pet.) (holding party invoked judicial process by participating in litigation "only up until the point that she received an adverse ruling from the district court and was faced with the possibility of having the court impose case-crippling sanctions.").

## B.    Prejudice

A party seeking to establish waiver of the right to arbitrate must establish that (1) the movant substantially invoked the judicial process, and (2) prejudice as a result of the opposing party's inconsistent conduct. *See G.T. Leach Builders*, 458 S.W.3d at 511–12. Having concluded that Met substantially invoked the judicial process, we are next charged with considering whether 49North and Passe established they were prejudiced as a result.[32]

---

[32]    In 2022, the United States Supreme Court issued *Morgan v. Sundance, Inc.*, 596 U.S. 411, 416–19 (2022), rejecting any requirement of proof of prejudice as an "arbitration-specific" federal procedural rule in cases brought in federal court.

"In the context of waiver of the right to arbitrate, prejudice generally focuses on the inherent unfairness caused by a party's attempt to have it both ways by switching between litigation and arbitration to its own advantage." *Momentum Project Controls, LLC v. Booflies to Beefras LLC*, No. 14-22-00712-CV, 2023 WL 4196584, at *5 (Tex. App.—Houston [14th Dist.] June 27, 2023, pet. denied) (mem. op.) (citing *G.T. Leach Builders*, 458 S.W.3d at 515; *Perry Homes*, 258 S.W.3d at 597). Relevant to the prejudice issue are considerations of delay, expense, or damage to another party's legal position. *See Momentum Project Controls*, 2023 WL 4196584, at *5. "The nonmovant must show the fact of prejudice, but not its extent." *Courtright*, 647 S.W.3d at 522 (citing *Perry Homes*, 258 S.W.3d at 599).

As noted, 49North and Passe incurred more than $10,000 in litigation expenses and $178,000 in attorneys' fees during the litigation of the case. And the case was on its fourth trial setting, based in part because of Met and Skinner's motions for continuance requesting additional discovery. Met did not move to

Whether that ruling would govern as a matter of procedure in state court is generally unsettled. *See Momentum Project Controls, LLC v. Booflies to Beefras LLC*, No. 14-22-00712-CV, 2023 WL 4196584, at *5 n.5 (Tex. App.—Houston [14th Dist.] June 27, 2023, pet. denied) (mem. op.) (citing *Robinson v. Homeowners Mgmt. Enters.*, 590 S.W.3d 518, 528 n.46 (Tex. 2019)). We leave that matter for the Texas Supreme Court to determine. *See, e.g.*, *GRGP, Inc. v. Black Forest Holdings, Inc.*, No. 01-23-00314-CV, 2023 WL 8459522, at *7 & n.5 (Tex. App.—Houston [1st Dist.] Dec. 7, 2023, no pet.) (mem. op.) (making prejudice determination).

compel arbitration until fifteen months after the suit was filed and only after the trial court issued adverse summary judgment rulings awarding significant damages to North49 and Passe on their breach of contract claim—a claim Met now seeks to advance in arbitration anew. In light of the above, we conclude 49North and Passe have established they would be prejudiced should arbitration be compelled.

After considering the totality of the circumstances, we conclude Met substantially invoked the judicial process and waived its right to arbitration. We further conclude that 49North and Passe would be prejudiced if arbitration were compelled.

We overrule Met and Skinner's issue as it pertains to Met.

### Skinner's Motion to Compel

Met and Skinner argue that Skinner should not be forced to litigate the claims asserted against him because he did not "meaningfully participate[] in the litigation, and his right to arbitration remains firm."

49North and Passe respond, as they did below, that Skinner does not have a right to compel arbitration because he is not a party to the contract. They contend that because Skinner never addressed this issue in the trial court, he failed to preserve any argument that as a non-signatory to contract, he has a right to compel arbitration. 49North and Passe also argue that even if he had a right to arbitration, Skinner waived any such right by substantially invoking the judicial process.

25

Skinner concedes that "while signing the contract as Met's CEO, [Skinner is] not himself a party of the agreement." Because he is not a party to the contract, Skinner must establish why he nonetheless has a right to compel arbitration.

"[N]on-signatories to an arbitration agreement can sometimes compel arbitration or be compelled to arbitrate." *Steer Wealth Mgmt., LLC v. Denson*, 537 S.W.3d 558, 565 (Tex. App.—Houston [1st Dist.] 2017, no pet.) (citing *Amateur Athletic Union of the U.S., Inc. v. Bray*, 499 S.W.3d 96, 103–04 (Tex. App.—San Antonio 2016, no pet.)). Texas courts have recognized six theories under which non–signatories to a contract can enforce arbitration agreements: (1) incorporation by reference; (2) assumption; (3) agency; (4) alter ego; (5) equitable estoppel; and (6) third-party beneficiary status. *Steer Wealth Mgmt.*, 537 S.W.3d at 566. The only of the six theories that Skinner alludes to on appeal is that of estoppel, but his argument is sparse. Met and Skinner merely argue, "The claims against Skinner 'arise out of or relate to' the February 2023 contract. His right to invoke Met's arbitration agreement follows. The plaintiffs must abide by the arbitration clause, as their claims against Skinner substantively target Met."

49North and Passe argue Skinner did not preserve error on this point because he did not argue in the trial court, as he now does on appeal, that as a non-

signatory to the contract, he is entitled to invoke arbitration.[33] They further argue that Skinner's ostensible argument that equitable estoppel allows him to compel arbitration as a non-signatory was not raised in the trial court and, thus, it also was waived. We agree that Skinner did not preserve these arguments for review.

In their Motion to Compel, Met and Skinner stated that 49North and Met signed a contract containing a valid and enforceable arbitration clause. They did not argue that Skinner was a party to the contract, nor did they argue that any of the theories allowing a non-signatory to compel arbitration applied to Skinner. They simply argued, without more, that because the contract contained an arbitration clause and Met had "now initiated arbitration . . . further litigation in this Court would be improper."

In their opposition to the Motion to Compel, North49 and Passe argued that Skinner could not compel arbitration because he was not a signatory to the contract. In their reply, filed the day before the hearing on the Motion to Compel, Met and Skinner did not address this argument. Met and Skinner instead focused on waiver claiming Skinner had not waived his right to arbitration and that no prejudice would result to the non-movants if arbitration were compelled.

---

[33] They also argue that Skinner did not argue in the trial court, as he now does on appeal that (1) his conduct was separate from Met's conduct, (2) he, as opposed to Met, did not waive arbitration, (3) he took only a "passive approach to this litigation," (4) there was no evidence proffered by 49North and Passe to establish Skinner waived arbitration, and (5) Skinner's conduct did not prejudice 49North and Passe.

27

Met and Skinner respond that they preserved error with respect to Skinner because (1) Skinner was a movant in the Motion to Compel and in the reply; (2) and because their counsel stated during the hearing on the Motion to Compel:

> Mr. Skinner signed the contract and entered the (unintelligible) arbitration clause with this berth. Once he gets sued for breaching that contract or for causes around that contract, he gets to go to arbitration.
>
> . . . But it is very clear that nothing he has said, not the delay, not the number of days, nothing, is sufficient to overcome the presumption favoring arbitration in this state.

We disagree that this preserved the issue for our review.

Neither the Motion to Compel nor the reply addressed why, as a non-signatory, Skinner could compel arbitration. The fact Skinner joined the motion and the reply thus does not resolve the issue. Nor did Skinner's counsel's statement during the hearing preserve the issue for review. Counsel argued that Skinner "*signed the contract*" and that he "had *entered* the arbitration clause with his berth." The statement thus focused on Skinner's status as a party to the arbitration clause. Skinner did not address why, as a non-signatory to the contract, he was entitled to compel arbitration. Nor did he make any argument with respect to any of the six non-signatory exceptions.

Because Met and Skinner did not address in the trial court any of the six theories under which a non–signatory to a contract can enforce an arbitration agreement, they are precluded from asserting any of those theories on appeal. *See*

28

*Carr v. Main Carr Dev., LLC*, 337 S.W.3d 489, 494 (Tex. App.—Dallas 2011, pet. denied) (holding that because non-signatory to arbitration agreement "did not raise the agency issue in the court below, it has not been preserved for our review") (citing TEX. R. APP. P. 33.1; *Gibson v. Ellis*, 126 S.W.3d 324, 330 (Tex. App.—Dallas 2004, no pet.)); *see also generally Santander Consumer USA, Inc. v. Mata*, No. 03-14-00782-CV, 2017 WL 1208767, at *3 (Tex. App.—Austin Mar. 29, 2017, no pet.) (mem. op.) ("To preserve error for appeal, the argument made in the trial court must comport with the argument made on appeal.").

And because it is undisputed that Skinner is not a party to the contract and did not preserve any argument regarding the ability of a non-signatory to compel arbitration, the trial court did not err in denying the Motion to Compel as to Skinner. *See Steer Wealth Mgmt.*, 537 S.W.3d at 566 (identifying theories under which non–signatories to contract can enforce arbitration agreements).

We overrule Met's and Skinner's issue as it pertains to Skinner.[34]

### Conclusion

We affirm the trial court's order denying the Motion to Compel. All pending motions are denied.

---

[34]    In light of our disposition, we need not address whether Skinner waived his right to arbitration.

Veronica Rivas-Molloy
Justice

Panel consists of Justices Rivas-Molloy, Johnson, and Dokupil.